**Hector DESIGA, Appellant,**

v.

**Eric H. SCHEFFEY, M.D.; East Harris County Orthopedic Associates, P.A.; Jorge Guerrero, M.D., Mid–America Hospitals, Inc.; Doctors Hospital 1984, Ltd., D/B/A Doctors Hospital; Appellees.**

No. C14–93–00267–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 24, 1994.

Rehearing Overruled April 28, 1994.

Before ROBERTSON and CANNON, JJ., and MORSE, J. (Sitting by Designation).

## OPINION

ROBERTSON, Justice.

This appeal comes to us from the trial court's granting summary judgment in favor of all appellees in a suit filed alleging medical malpractice. Although appellant originally named some twenty-one defendants in the lawsuit, he nonsuited all but the five parties now before us as appellees. Appellant brings four points of error, all essentially asserting the trial court erroneously granted the summary judgments. We affirm the summary judgments as to all appellees.

Hector Desiga injured his back in the course of his regular employment and filed a worker's compensation claim. Pursuant to this claim, he underwent treatment at a clinic. The treating physician noted Mr. Desiga's back condition as "normal," that is, having some variances but none serious enough to warrant a rating other than "normal." Mr. Desiga, unaware of this diagnosis, discontinued treatment at the clinic and pursued treatment with Dr. Jorge Guerrero, who ordered further diagnostic testing and referred Mr. Desiga to Dr. Eric Scheffey upon finding in the test results more severe abnormalities in Mr. Desiga's back condition. Dr. Scheffey concluded upon seeing Mr. Desiga that he required surgery, and Dr. Scheffey performed a lumbar laminectomy on October 28, 1986. After this operation, Mr. Desiga continued to be in pain and stated as much one year later to another doctor, Dr. Lyonberger, adding that he was not satisfied with Dr. Scheffey's surgery. In September of 1988,

approximately twenty-three months after the operation, Mr. Desiga testified in a deposition concerning the worker's compensation claim that he was not satisfied with Dr. Scheffey's performance and that he was still experiencing back pain.

On September 19, 1989, Mr. Desiga became aware of another neurosurgeon's review of his medical records detailing the condition of his back before the surgery by Dr. Scheffey. This doctor, Dr. Barrash, stated that in Mr. Desiga's case the surgery was unnecessary in the first place because the tests ordered by Dr. Guerrero showed that Mr. Desiga had only bruised his back. Dr. Barrash asserted that Dr. Scheffey was known as someone who performed unnecessary surgeries, and performed them poorly, for his own personal gain. Mr. Desiga asserts that he thus did not learn of his injury until September 19, 1989. He filed suit January 2, 1991, some sixteen months after he was made aware of the statements of Dr. Barrash. The appellees filed motions for summary judgment, asserting that the controlling statute was section 10.01 of the Texas Medical Liability and Insurance Improvement Act which mandates an absolute two-year statute of limitation for all health care claims. Therefore, Dr. Guerrero contends that the two-year statute of limitation expired in 1989, two years following his last treatment of Mr. Desiga. The remaining appellees take the position that the two-year statute of limitation expired in September 1990, two years after the surgery. The trial court granted the three separate summary judgment motions submitted by all appellees, and Mr. Desiga appeals.

Before assessing the motions for summary judgment and the response to the summary judgment, we find it helpful to place the facts of this case into the convoluted legal framework surrounding the application of the statute of limitation in medical malpractice cases. The legislature enacted the Medical Liability Act in reaction to a perceived medical malpractice crisis to establish a strict two-year statute of limitation for claims arising out of any kind of medical treatment. *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987); *Melendez v. Beal,* 683 S.W.2d

869, 871 (Tex.App.—Houston [1st Dist.] 1984, no writ). The relevant part of the statute reads as follows: "Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed...." TEX.REV. CIV.STAT.ANN. art. 4590I, § 10.01 (Vernon Supp.1994).

This statute effected a complete abrogation of the traditional discovery rule in medical malpractice cases. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985). Thus, the statute eradicates what was perceived as the most pernicious aspect of the discovery rule, the filing of malpractice suits long after the actual act of malpractice occurred. The primary difference between the discovery rule and the statute of limitation found in article 4590i is the question of when does a cause of action accrue. The discovery rule entailed postponing the accrual of the cause of action until the injured party discovered, or should have discovered through reasonable diligence, his cause of action. *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex.1967). The statute, however, unequivocally states that the statute of limitation begins to run, without exception, on the date of the actual breach or tort which is the basis of the claim. The statute thus simplifies the legal atmosphere of medical malpractice cases by eliminating the step of determining the nebulous question of when a plaintiff's cause of action accrued. *See Nelson v. Krusen*, 678 S.W.2d 918, 920 (Tex. 1984) (stating section 10.01 imposes strict two-year limitations regardless of when injury discovered); *Black v. Wills*, 758 S.W.2d 809, 815 (Tex.App.—Dallas 1988, no writ) (discussing lack of accrual language in Medical Liability Act).

█ The strict and absolute nature of the statute did not fare well among Texas courts, however, and resulted in the courts' creating an exception, albeit a narrow one, to this legislative mandate. This exception is based on the open courts provision of the Texas Constitution which states that "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The courts have used this provision to defeat the strict application of the two-year statute of limitation, basing their constitutional analysis on the principle that the legislature cannot abridge a citizen's access to the courts to bring a common-law action. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990) (stating legislature cannot create a remedy contingent upon an impossible condition); *Sax v. Votteler*, 648 S.W.2d 661, 664–65 (Tex.1983) (tracing Texas courts' historical emphasis on importance of citizen's right to bring suit); *Hanks v. City of Port Arthur*, 121 Tex. 202, 48 S.W.2d 944, 950 (1932) (striking down impossible condition in municipal ordinance requiring notice be given of defect before injury occurs). Thus, in crafting what one commentator has called the "open courts defense," the courts have used constitutional authority to assert what seems to be a common-sense notion: that the very nature of some medical malpractice cases may make it inherently impossible for an injured plaintiff to discover his injury within two years of the actual act of malpractice. *See Melendez*, 683 S.W.2d at 873 (stating two-year statute of limitation unfair when its application leads to "unreasonable, absurd, and unjust" results); *see also* Terry L. Jacobson & Kevin L. Wentz, *A Lawyer Has To Know His/Her Limitations—The Statute of Limitation in Medical Malpractice Cases: A Constitutional Compromise*, 23 TEX.TECH. L.REV. 769, 774 n. 22 (1992) (explaining that although plaintiff uses this argument, it is a "defense" because it is a plea countering the affirmative plea of limitations). In such cases, justice demands that a party be given a reasonable opportunity to discover his injury and bring suit. Thus, the open courts defense includes an inquiry only into whether within the two-year statute of limitation the injured party had a reasonable opportunity to discover the injury and bring suit. *See Morrison v. Chan*, 699 S.W.2d 205, 207–08 (Tex.1985); *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985). If there were no such reasonable opportunity allowed an injured plaintiff, then the absolute cut-off time is unconstitutional in its denying a day in court to a

wrongfully injured party. *See generally Nelson v. Krusen*, 678 S.W.2d 918, 921 (Tex. 1984) (discussing due process and open courts guarantees in Texas Constitution).

Because the facts comprising an open courts defense will necessarily be case-specific, determining whether the defense will result in a successful challenge to the statute's constitutionality infuses an element of uncertainty into what was hoped to have been a clear-cut statute of limitation question. Therefore, in analyzing the applicability of the defense to defeat the two-year statute of limitation, the guiding principle must be the forthright rejection of the discovery rule. Unfortunately, the various courts of appeals, in analyzing the constitutionality of the statute in terms of the open courts provision, have used language similar to the abrogated discovery rule, thereby creating some confusion over the pleading and application of this constitutional argument. *See generally* Terry L Jacobson & Kevin L. Wentz, *A Lawyer Has To Know His/Her Limitations—The Statute of Limitation in Medical Malpractice Cases: A Constitutional Compromise,* 23 TEX.TECH.L.REV. 769, 772–89 (1992) (analyzing different language used in applying open courts defense). ·

■ Having established this historical framework of the legal issues in this case, we now turn to determining whether appellees presented competent summary judgment proof to sustain the granting of their motions. Appellees had the burden of proving there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Wilson v. Rudd,* 814 S.W.2d 818, 823 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Because a summary judgment proceeding denies an individual's right to a trial, we review the summary judgment proof in the light most favorable to the non-movant, and any reasonable inference or doubt arising from the evidence must be resolved in his favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Additionally, in a case in which the non-movant argues facts constituting the open courts defense, the movant is obligated to negate this defense. *Marchal v. Webb,* 859 S.W.2d 408, 418 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Krueger v. Gol,* 787 S.W.2d 138, 140–41 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

Mr. Desiga asserted in his response to the summary judgment motions that three fact issues existed: first, the question of on which date Dr. Scheffey completed his treatment of Mr. Desiga; second, whether he had a reasonable opportunity to learn of his injury during the two-year statute of limitation; and third, whether Dr. Scheffey fraudulently concealed the facts of the cause of action. Mr. Desiga's second and third points of error on appeal encompass these fact issues.

■ We find there is no relevant fact issue as to the last date of treatment because as a matter of law the applicable date for running the statute of limitation as to Dr. Scheffey is the date of surgery. A course of treatment analysis is used only when there is no ascertainable date to determine when the breach of duty or tort occurred. *See Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex. 1987) (explaining three-date scheme of section 10.01 as aid to persons unable to ascertain precise date of breach or tort). Here, Mr. Desiga complains of negligence arising out of the surgery performed by Dr. Scheffey. The fact of performing surgery which was unnecessary and negligently performed, as alleged by plaintiff, formed the substance of the complaint. Any and all other complaints arise out of this procedure. Therefore, it is this date which is used to begin the two-year statute of limitation. Consequently, we need not determine the date on which Dr. Scheffey completed his treatment of Mr. Desiga.

In support of his position that appellees did not establish the beginning date of the statute of limitation, appellant cites us to the case of *Jones v. Cross,* 773 S.W.2d 41 (Tex. App.—Houston [1st Dist.] 1989, writ denied). The court in *Jones* used the last day of treatment from which to run the statute of limitation, even though the appellant had undergone two eye surgeries which formed the basis of his malpractice action, because the court found that the petition included complaints concerning the follow-up treatment. In the instant case, however, the complained

of negligence did not arise out of the physical therapy prescribed by Dr. Scheffey, which was the course of treatment Mr. Desiga received after the operation. *See Thames v. Dennison*, 821 S.W.2d 380, 383 (Tex.App.—Austin 1991, writ denied) (stating follow-up treatment after surgical procedure does not extend statute of limitation when complaint concerns surgical procedure). We find that appellant's complaints as to all appellees revolve around the date of surgery in October 1986; therefore, appellant failed to raise a relevant fact issue here.

 However, Mr. Desiga's complaint as to Dr. Guerrero is confined to Dr. Guerrero's referring Mr. Desiga to Dr. Scheffey in the first place. Although additional allegations are made in appellant's fourth amended original petition, the response to the summary judgment confines the complaint regarding Dr. Guerrero to the allegedly negligent referral. A non-movant in a summary judgment proceeding cannot rely on prior pleadings to bring potential fact issues to the attention of the trial court. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). Thus, on appeal, appellant has preserved only the matter of the referral. Because Mr. Desiga alleges only the fact of negligent referral, the "breach or tort that is the subject of the claim" is the referral itself. Dr. Guerrero submitted as summary judgment proof an affidavit outlining the exact date of the referral to Dr. Scheffey as well as the last date of treatment of Mr. Desiga. These dates demonstrate that Mr. Desiga brought suit well beyond the two years statute of limitation. Thus, Mr. Desiga's burden was to raise a fact issue that would rebut Dr. Guerrero's establishing his entitlement to judgment as a matter of law. *Bell v. Moores*, 832 S.W.2d 749, 751–52 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

 The second fact issue appellant tried to raise was the open courts defense whose uneven application we have already discussed above. Appellees, with the exception of Dr. Guerrero, presented summary judgment proof consisting of Mr. Desiga's deposition testimony for his worker's compensation claim in which he related his dissatisfaction with Dr. Scheffey's surgery and his realization that the surgery had not been successful. Thus, the question posed to us becomes the following: whether in the context of a summary judgment proceeding appellees have established with this proof that Mr. Desiga had a reasonable opportunity to discover his injury and bring suit within the two years following the surgery. We find that this question is not one of fact. Appellant does not dispute these facts. Rather, the parties seem to differ on the legal significance of this awareness on Mr. Desiga's part. We find that such awareness, through his own admissions, demonstrates that he had a reasonable opportunity to bring suit within the two-year statute of limitation. The following review of the cases demonstrates why this evidence shows how Mr. Desiga cannot successfully invoke the open courts provision to defeat the appellees' affirmative defense of the statute of limitation.

While we hesitate to make a similar misstep as others courts have understandably made in interposing the language of the traditional discovery rule and the open courts defense, we open our discussion with an older case addressing the traditional discovery rule in the context of a misdiagnosis case. The case bears mentioning for its articulate statements regarding the purpose of statutes of limitation in general. In this case, *Robinson v. Weaver*, 550 S.W.2d 18 (Tex.1977), the supreme court refused to extend the discovery rule to misdiagnosis cases for policy reasons applicable in the instant case as well. *Id.* at 22. In *Robinson*, the patient bringing the malpractice suit had been diagnosed as having a herniated disc between the fourth and fifth vertebrae. The doctor operated to repair the disk, but the patient continued to experience back pain. The patient went to see another doctor one year later who performed tests revealing a herniated disk between the third and fourth vertebrae. The doctor removed this disk through surgery. The patient sued the original doctor for the erroneous diagnosis, hoping to invoke the discovery rule by saying he could not have discovered the injury until the second operation was completed.

The court rejected this argument for policy reasons, striking a balance between the necessity of having statutes of repose and of providing redress for wrongfully injured plaintiffs. The court looked to other jurisdictions to compare other extensions of the discovery rule and concluded that the passage of time made a fair trial even more difficult in the case of a misdiagnosis which is a cause of action complaining of an error in one's professional judgment. In such cases, there would be no tangible, physical evidence manifesting the error as there inevitably is in such cases as foreign objects left in a surgical patient's body or an operation for a vasectomy gone awry. *See Hays v. Hall,* 488 S.W.2d 412, 414 (Tex.1972) (stating statute of limitation for negligent performance of vasectomy begins to run on date discovery of true facts of failure of operation or on date such facts should have been known); *Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967) (stating cause of action for negligently leaving sponge in patient's body accrues when patient learns of or through diligence should have learned of presence of foreign object in body). In such cases, where there is some tangible manifestation of negligence, such as the sponge or the unwanted pregnancy, there are neither questions of a plaintiff's credibility nor uncertainty as to the possibility of a false or frivolous claim. *Robinson,* 550 S.W.2d at 21 (citing *Fernandi v. Strully,* 35 N.J. 434, 173 A.2d 277 (1961)). Because the application of the discovery rule results in a cause of action being brought long after the act of alleged malpractice, the court viewed the misdiagnosis case as being a most inappropriate circumstance for applying the discovery rule.

This case shows the policy reasons behind statutes of limitation in the first place, namely, the necessity of bringing timely claims when the evidence necessary for trying the case can be still relatively fresh and vividly recalled by the parties. Otherwise, no claim, no matter how legitimate, could be heard in a just and fair manner which all parties deserve. Thus, statutes of limitation will always cut off some legitimate and worthy claims—such is their effect in their aim of providing repose for what would otherwise become stale claims. Accordingly, the open courts defense cannot be invoked simply to defeat an occasionally unfair result of a statute of limitation when the requisite impossibility of discovery is not present.

Many cases addressing the open courts defense do so in the context of reversing summary judgments because of a fact question. In support of our position that there is no fact question in the instant case, we will review some of these cases to determine what courts have found to be a legitimate fact issue.

In one such case, the court had to apply the traditional discovery rule because it found that section 10.01 of the Act could not operate retroactively to the time at which the alleged negligence in the case had occurred. *Baldridge v. Howard,* 708 S.W.2d 62, 65–66 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). However, this case is still relevant for our purposes because the court stated that its analysis would be the same using an open courts defense to section 10.01 of the Act. *Id.* at 66. The question in *Baldridge* was whether Ms. Baldridge could have known of her injury within the two-year statute of limitation. Because the court used the traditional discovery rule, they framed the question as did she know, or should she have known, of her injury in February 1974, the date on which she found out from another doctor that the thyroidectomy performed on her in 1973 had caused permanent damage to her left vocal cord. Ms. Baldridge stated in her summary judgment evidence that she was told the paralysis of her vocal cord was only a temporary condition. The summary judgment proof of the movant, consisting of a Dr. Gillmore's affidavit, did not resolve this fact question of whether within the two years Ms. Baldridge had a reasonable opportunity to know of the permanent injury to her vocal cords. The movant only stated that the patient had to have known in February 1974 of a "likely association between the thyroid surgery and the permanent paralysis of her left vocal cord." Taking all the evidence favorable to the non-movant and resolving any doubt in her favor, the court found a fact issue existed as to whether Ms. Baldridge understood the nature of her injury in February 1974. The court only summarily dis-

cussed the case in an open courts context, but concluded by saying that in a summary judgment proceeding the appellate court had to accept as true her contention that she did not found out, and could not have found out, about the *permanent* paralysis until 1982. The summary judgment proof of the movant could not point to any evidence or knowledge on the non-movant's part such as is present in the instant case.

In another case relied on by appellant, *Gatling v. Perna*, 788 S.W.2d 44 (Tex.App.— Dallas 1990, writ denied), the court made special allowances for the fact that the patient was a psychiatric patient whom they could not fault for giving greater credibility to her psychiatrist's lack of concern for the symptoms she complained of, than to another physician she had only seen once and who told her the drugs prescribed by her psychiatrist had resulted in her having tardive dyskinesia. What was reasonable in *Gatling* was specifically tailored to the circumstances of the particular patient. Again, in the instant case, we have a patient who had already seen a couple of doctors in the course of his worker's compensation claim, who complained of pain to at least one physician, and who, in deposition testimony, expressed dissatisfaction with Dr. Scheffey's performance.

The cases discussed above demonstrate the courts' refusal to accept mere assertions from physicians that the patient should have known of some connection between the treatment received and the alleged negligent injury. The courts do require some diligence and effort on the patient's part in making inquiry of symptoms related to the treatment received. The next case clearly illustrates this point.

In *Del Rio v. Jinkins*, 730 S.W.2d 125 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.), the court reversed a summary judgment upon finding the appellant raised a fact issue as to whether he had a reasonable opportunity to discover his injury. In *Jinkins*, the injury received through the alleged malpractice and the original cause for seeing the defendant physician were in no way related. Thus, it was impossible for the plaintiff, Mr. Del Rio, to connect the stomach pains he was feeling with the radiation treatment received from Dr. Jinkins as follow-up treatment to the surgery for cancer in one of his testicles. Such impossibility is the gravamen of the open courts defense against running the absolute two-year statute of limitation because such impossibility denies an injured party the necessary "reasonable opportunity" to discover an injury and bring suit.

Mr. Del Rio's radiation treatments ended on June 18, 1982. His stomach pain began some twenty days later, and another doctor operated for a stress-related ulcer. Mr. Del Rio asserted in an affidavit that he did not know the stomach pain was connected to the radiation treatments until September 1984. The court had to acknowledge in a footnote that it realized that most cases "seem to equate feelings of pain with discovery of the injury." *Id.* at 127 n. 1. However, the court distinguished Mr. Del Rio's case by noting that he had made a good faith effort to determine the reason for his stomach pains by seeing another doctor. The court's distinction creates the inference that Mr. Del Rio would certainly have been on notice for some wrongdoing in the radiation treatment or the surgery if the pain after the treatment had been confined to the area of his testicles. As the pain was not so confined, there was little a layperson could do to diagnosis the reason for his pain, and, accordingly, Mr. Del Rio took action by seeing another doctor. There was no physical manifestation of an obvious connection between the two incidents which would constitute his having a reasonable opportunity to bring suit.

In another fact situation, one which the supreme court addressed, a patient had no physical manifestations of her illness, nor any other means of discovering the negligent act which was an alleged misdiagnosis of a pathology report. *See Hellman v. Mateo*, 772 S.W.2d 64 (Tex.1989). In this case, the patient, Ms. Hellman, underwent a biopsy and removal of a lymph node in January of 1983. On January 10, 1983 the pathology report diagnosing the biopsied lymph node as benign was placed in her file. When hospitalized in August 1984 for the removal and biopsy of another lymph node in the same area of her neck, doctors found this other lymph node to show Hodgkins disease. On

September 4, 1984 it was determined that the disease was in fact in an advanced and critical stage. In January 1985 Ms. Hellman contacted counsel to pursue a possible malpractice claim. The suit was filed on August 30, 1985, two years and seven months after the allegedly erroneous pathology report was made and placed in Ms. Hellman's file.

The exact issue centered around whether Ms. Hellman had raised a fact question at all. *Hellman,* 772 S.W.2d at 66. The court determined Ms. Hellman's deposition excerpts did raise a fact question and that it was not sufficient for the movant to simply contend that the patient *should have discovered* her cause of action within the two-year timeframe, namely, in September 1984 when she found out her other lymph node showed signs of the disease. The court did not even address whether she had a reasonable opportunity to determine her injury and bring suit because the defendant doctor did not provide adequate information to refute the fact issue raised, such as appellees present in the instant case. Thus, in *Hellman,* the supreme court found there was a fact question basically because the defendant doctor did a poor job of refuting the plaintiff's contentions. The doctor only asserted that Ms. Hellman should have been on notice of the possibility of malpractice in September 1985 when she found out the other lymph node showed signs of advanced Hodgkins disease. There was no proof brought forth by the movant to substantiate the blind assertion.

Appellant contends that this court's decision in *Krueger v. Gol* is dispositive of his case. *Krueger v. Gol,* 787 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1990, writ denied). We do not agree although factual allegations of the two cases are admittedly quite similar. In *Krueger,* a woman alleged medical malpractice because unnecessary back surgeries were performed on her. The only summary judgment proof the opinion discusses is her statement that she did not find out about the unnecessary surgeries until early 1987, more than three years after the last surgery, when another physician diagnosed her with multiple sclerosis. *Id.* at 141. In that opinion we held that the summary judgment proof presented by the doctor was not sufficient to refute Mrs. Krueger's affidavit which we found raised a fact question concerning the open courts defense.

In the instant case, however, the appellees, with the exception of Dr. Guerrero, bring forth summary judgment proof showing Mr. Desiga's complaining of his pain and his dissatisfaction with Dr. Scheffey, yet doing nothing about his situation. We find this information constitutes competent summary judgment proof to refute the fact issue appellant attempted to raise concerning the open courts defense. To find otherwise would be poor precedent indeed.

▮ The open courts defense is not a discovery rule. It is a judicially created exception to the sometimes harsh results engendered by a literal application of the strict two-year statute of limitation of the Medical Liability Act. To accept Mr. Desiga's argument, that we run the two-year statute of limitation from the date Dr. Barrash told him the back surgery was unnecessary, would be to reinstate the discovery rule clearly abrogated in section 10.01 of the Act. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985) (holding that patient discovered injury within two years after treatment and thus rejecting running limitations from date of discovery of actual negligence); *Neagle v. Nelson,* 685 S.W.2d 11, 14 (Tex.1985) (Kilgarlin, J., concurring) (noting obvious error in applying a limitations period "that would allow suits to be filed within two years after the date of discovery" when legislature intended to abolish discovery rule).

We do not dispute or discount the seriousness of Mr. Desiga's allegations against Dr. Scheffey and the other appellees. If true, such facts could have serious repercussions. We are bound, however, by the law and cannot accept appellant's argument which is in effect nothing more than a reworked discovery rule. Should the legislature decide that the article 4590i statute of limitation has created more problems than solutions and reinstate a traditional discovery rule, we will begin to assess medical malpractice cases in that light. In the meantime, we find that to give full force to the policy reasons evident in the case law on the open courts defense and the statute of limitation, we find the statute

constitutional as applied to Mr. Desiga because within the two years after the surgery he had a reasonable opportunity to discover his injury and to bring suit.

■ Before we affirmatively overrule points of error one through three, we must discuss the failure of Dr. Guerrero to attach as additional summary judgment proof the deposition testimony of Mr. Desiga which we found above as a matter of law demonstrated his reasonable opportunity to discover his injury and bring suit within the statute of limitation. The motions for summary judgment of the four other appellees contain this proof. Dr. Guerrero's summary judgment proof establishes as a matter of law his affirmative defense of statute of limitation but does not have the additional proof necessary to rebut the open courts defense raised by Mr. Desiga. However, in view of the unique circumstances of this case, we find this omission to be not fatal as to Dr. Guerrero's summary judgment for the following reasons. Only one hearing was set for the judge to rule on all of the motions. All of the motions were heard at the same time, January 22, 1993 at 9 a.m. At the same hearing, the trial court heard all of the arguments in support of the various motions. The trial court granted summary judgment for all appellees the same day. In the unique facts and circumstances of this case, to find otherwise would place the trial court in a position of having to engage in the artifice of ignoring Mr. Desiga's deposition testimony which was otherwise on file with the court in the form of the other appellees' motions for summary judgment.

We find support for this holding in the Texas supreme court's recent demonstrations of increasing leniency in the areas of both summary judgment proceedings in general and summary judgment evidence specifically. See McConathy v. McConathy, 869 S.W.2d 341, 341 (Tex.1994) (holding deposition excerpts used as summary judgment evidence need not be authenticated to be considered competent summary judgment proof); Mafrige v. Ross, 866 S.W.2d 590, 590 (Tex.1993) (holding parties may make otherwise unappealable order final simply by adding "Mother Hubbard" language in the order). Such a

holding with regard to Dr. Guerrero is in effect acknowledging the trial court's capacity to take judicial notice of those documents on file with it at the time of a hearing on a motion for summary judgment. The other parties' motions for summary judgment having been duly filed with the trial court for its consideration constituted part of the record before it. See McCurry v. Aetna Casualty & Surety Co., 742 S.W.2d 863, 867–68 (Tex. App.—Corpus Christi 1987, writ denied) (stating that in summary judgment case trial court may judicially notice documents part of its record in the case before it). Accordingly, points of error one through three are overruled.

■ Appellant's fourth point of error concerns his assertion that he raised a fact issue regarding the fraudulent concealment cause of action in his response to the motion for summary judgment. We find appellant failed to sufficiently set out facts which would support this cause of action. The law in this area is clear in requiring extremely specific facts in order to prevail. See, e.g., Wilson v. Rudd, 814 S.W.2d 818, 823 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (stating affirmative burden on plaintiff's part to bring evidence that defendant had actual knowledge of wrong and purpose to conceal such knowledge); Arabian Shield Development Co. v. Hunt, 808 S.W.2d 577, 584 (Tex.App.—Dallas 1991, writ denied) (reciting elements of fraudulent concealment cause of action). The cases appellant cites differ dramatically from his case for they show that a successful allegation of fraudulent concealment requires some evidence showing the physician, with whom the patient had a doctor-patient relationship, had information that he did not tell the patient or information that was altered in some way before it was given to the patient. In Borderlon v. Peck, for example, the doctor admitted he left a needle in the patient's abdomen but insisted, contrary to the patient's allegation, that he had told the patient this fact. Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex.1983).

In Warner v. Sunkvalli, 795 S.W.2d 326, 328 (Tex.App.—Eastland 1990, no writ), actual evidence was presented to the court as summary judgment proof which implied two

doctors' knowledge of facts not told the patient. In this case, a patient having severe abdominal pains returned to the two doctors who had sixteen days before performed a gallbladder operation on him. As summary judgment proof of fraudulent concealment, the patient presented a report, available to the doctors before the operation as part of the patient's medical files, that noted the possible presence of small gallstones. The court held that the report constituted circumstantial evidence from which a jury could find fraudulent concealment in the doctors' explaining away their patient's continued pain as only "phantom pain." Appellant presents no such proof which can be used to show, even circumstantially, that appellees knew the operation was unnecessary and negligently performed. We overrule point of error four.

The judgment of the trial court is affirmed.