**Michael RATLIFF and Shirley Ratliff, Appellants**

v.

**Stephen E. EARLE, M.D., Appellee**

No. 04-96-00659-CV.

Court of Appeals of Texas, San Antonio.

Dec. 24, 1997.

Donna J. Bowen, Michael L. Slack, Sylvia H. Imhoff, Slack & Davis, L.L.P., Austin, James A. Hall, Branton & Hall, P.C., San Antonio, for Appellant.

Phylis J. Speedlin, Brett E. Dunn, Virginia A. Coyle, Clemens & Spencer, San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and LÓPEZ, JJ.

## OPINION

LÓPEZ, Justice.

This is an appeal of a summary judgment in which the trial court ruled that the two-year statute of limitations barred the medical malpractice claim. We find under the course of treatment doctrine that limitations in this case did not begin to run until the date of Dr. Earle's last treatment and that the claim is not barred by the statute. The summary judgment is reversed and the cause is remanded for a trial on the merits.

### Background

Michael Ratliff, a thirty-eight year old freight driver and handler, sustained a work-

related injury in June of 1991. Relatively early in the treatment, Dr. Earle performed extensive back surgery on Ratliff on November 21, 1991, and again on November 16, 1993. In the first surgery, Dr. Earle performed a three-level fusion and a four-level decompression of nerve roots, inserting Steffee plates which are metal bone plates and screws manufactured by AcroMed Corporation.[1] Ratliff's condition worsened. Two years later, Dr. Earle operated again to remove and replace the instrumentation which had failed to stabilize his spine. Ratliff's condition deteriorated to the point where he was unable to walk, talk, or care for himself. The course of treatment under Dr. Earle continued until January 4, 1994.

On December 17, 1993, Ratliff saw an episode of ABC–TV's "20/20" which discussed the use of bone plates and screws in spinal surgery. The program reported that implantation of the devices into the spine had not been approved by the FDA. It is Ratliff's position that during this broadcast he learned for the first time of problems, risks and complications associated with the use of such devices which Dr. Earle had not explained to him.

Ratliff filed a medical malpractice suit against Dr. Earle and others on February 28, 1994, less than two months after Dr. Earle stopped treating Ratliff's condition. His negligence claims include (1) misdiagnosis resulting in an unwarranted first surgery and, in addition, unnecessary surgeries; (2) that the resulting screw fracture or screw replacement surgery was medically unwarranted; (3) failure to warn of risks and complications connected to this device; fraudulent concealment and failure to warn that these instruments had no FDA approval for use in the spine. The petition also alleges separate causes of action against Dr. Earle for fraudulent concealment, strict liability for placing defective and unreasonably dangerous instruments into the stream of commerce and for misrepresentations, and deceptive trade practices.

### The Standard of Review

In reviewing a summary judgment based upon an affirmative defense such as limitations, the movant must conclusively prove all elements of the defense as a matter of law. *See Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989). To determine whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, every reasonable inference will be indulged in favor of the nonmovant, and any doubts will be resolved in the nonmovant's favor. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). Accordingly, the burden is on the movant to conclusively establish as a matter of law that limitations is a bar to the action. *See Rowntree v. Hunsucker,* 833 S.W.2d 103, 108 (Tex.1992).

### The Summary Judgment Evidence

Dr. Earle filed a motion for severance and a motion for summary judgment on the grounds of informed consent and that the statute of limitations barred this action. In support of summary judgment, Dr. Earle submitted his affidavit which appears to qualify him as an expert, states he first saw Ratliff as a patient in 1986, details his diagnosis and treatment in response to the 1991 injury, that he received the informed consent of Ratliff, and that Ratliff discharged him from further treatment on January 4, 1994. He further stated that his actions were in keeping with the standard of care, denied the allegations of negligence and misrepresentation, and stated that the lawsuit was filed two years, three months and seven days after the first back surgery.

Attached to Dr. Earle's affidavit were (A) a one-page consent form signed by Ratliff on November 20, 1991, concerning "lumbar luminectomy and discectomy with fusion and Steffee plates" and listing six risks (including "unstable spine"), (B) the rules of the medical disclosure panel and a blank § 601.3 disclosure and consent form, and (C) a one-page consent form signed by Ratliff on November 15, 1993, concerning the "hardware removal

---

1. The process is highly destructive of the existing spine whereby the surgeon cuts out disc material and inserts a metal scaffolding device which is screwed into the remaining bone material for the purpose of stabilizing the back.

and repair indicated including pedicle screw fixation as necessary" and listing the same six risks.

The Ratliffs responded by filing a fourth amended petition and a response supported by three exhibits: (A) the affidavit of Dr. Vert Mooney, (B) the affidavit of Michael Ratliff, and (C) excerpts from Dr. Earle's deposition. Ratliffs' response urged: (1) the claims were not time-barred because the course of treatment doctrine applies, (2) the equitable doctrine of fraudulent concealment tolled the statute of limitations so that suit was filed within two years of his discovery of the claim, and (3) strict enforcement of limitations would violate the open courts provision of the Texas Constitution because Ratliff did not have a reasonable opportunity to discover the injury until viewing the "20/20" broadcast, and suit was filed within a reasonable time thereafter.

Dr. Mooney is a board-certified orthopaedic surgeon and professor in the Department of Orthopaedics at the University of Southern California at San Diego with extensive credentials relevant to the field of spinal surgery. His affidavit establishes that he is familiar with the acceptable standards of medical care in Texas, having maintained staff appointments at Texas hospitals including Baylor University Medical Center in Dallas, Dallas Rehabilitation Institute, and Parkland Memorial Hospital in Dallas since 1965. He reviewed Ratliff's medical records, Dr. Earle's deposition, and Ratliff's affidavit. Dr. Mooney's affidavit outlines his opinion of the misdiagnosis, lack of informed consent, breach of the standard of care, and the misrepresentations Dr. Earle made during his course of treatment. In Dr. Mooney's opinion, Dr. Earle performed overly-extensive, unwarranted back surgery without clearly identifying Ratliff's spine pathology. The 1991 surgical procedure was an extremely destructive one, especially for a thirty-eight year old person. The surgery was performed much too early in the course of treatment and did not allow adequate time for healing after the initial injury. Dr. Mooney also criticized the lack of objective testing which would justify such drastic surgery and

Dr. Earle's erroneous interpretations of the various testing that was performed.

Michael Ratliff's affidavit outlines what he was told by Dr. Earle. He stated that Dr. Earle told him the 1993 surgery was necessary to replace four broken screws—when actually, the screws were not broken, but loose. He also outlines a tirade Dr. Earle had when Ratliff told him he would seek a second opinion after the second surgery. He outlines significant disabilities which developed after the surgeries. Ratliff states he first learned that his present symptoms may be related to the device that was surgically implanted in his spine in 1991 when he viewed the "20/20" program on December 17, 1993.

Dr. Earle objected to portions of Dr. Mooney's affidavit, in particular to his opinion that there was a deviation from the standard of care because the 1993 surgery was medically unwarranted, because it failed to set out the applicable standard of care for orthopaedic surgeons practicing in San Antonio in 1993. The trial court sustained the objections and granted the summary judgment "on all grounds," rendered a take-nothing judgment for plaintiffs against Dr. Earle, and granted a severance of the Earle claims.

## Statute of Limitations

The Medical Liability Act establishes an absolute two-year limitations period for health care liability claims. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 10.01. The supreme court has consistently held that section 10.01 abolished any application of the discovery rule in cases governed by the Act. See, e.g., *Diaz v. Westphal*, 941 S.W.2d 96, 99 (Tex. 1997); *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex.1996); *Nelson v. Krusen* 678 S.W.2d 918, 920 (Tex.1984). The two-year statute of limitations in a medical malpractice claim begins to run when one of three events occurs: (1) the date the breach or tort occurred; (2) the date the medical treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. Tex.Rev. Civ. Stat. Ann. art. 4590i, § 10.01; *see Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.

1987).[2] When the precise date of the specific breach or tort is ascertainable from the facts of the case, the limitations period begins to run from that date. *See Kimball,* 741 S.W.2d at 372. Dr. Earle's counsel argued that limitations began to run from the date of the first surgery and that all damages flowed from the results of that surgery. The trial court agreed.

### The Course of Treatment Doctrine

■ Ratliff argues that the appropriate trigger for the statute of limitations is the date of last treatment. The second provision of section 10.01 is applicable to misdiagnosis or mistreatment claims where "the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment." *Kimball,* 741 S.W.2d at 372.The mere existence of a general physician-patient relationship does not, on its own accord, constitute a "course of treatment." *Atha v. Polsky,* 667 S.W.2d 307, 309 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Thus, the date of last treatment is relevant only if a course of treatment has been established for the condition that is the subject of the claim. *See Rowntree v. Hunsucker,* 833 S.W.2d 103, 105 (Tex.1992). Whether a patient is receiving a course of treatment, and when the course of treatment ends depends upon the specific facts of the case. *See id.* at 106. Some factors to consider in this regard are whether a physician-patient relationship is established with respect to the condition that is the subject of the litigation, whether the physician continues to examine or attend the patient, and whether the condition requires further services from the physician. *See id.*

The supreme court applied this test in a misdiagnosis/mistreatment of breast cancer case. *See Chambers v. Conaway,* 883 S.W.2d 156 (Tex.1993). In *Chambers,* a woman complained of a lump in her breast, her family physician ordered a mammogram, and determined that the lump was benign. He saw the patient regularly for other medical purposes. Three years later he ordered a sec-

ond mammogram, from which he concluded that all was fine. *See id.* at 157. She was diagnosed with breast cancer by another physician some time later. In response to a motion for summary judgment, her medical expert stated that if a patient complains of a breast lump, the family physician has a duty to follow up on this condition during subsequent visits. *See id.* at 158. The supreme court held that this evidence tended to establish that the defendant was negligent in each office visit after the initial complaint. *See id.; see also Khatib v. Husain,* 949 S.W.2d 805 (Tex.App.—Fort Worth 1997, writ filed) (misdiagnosis and failure to order breast lump biopsies triggered limitations period on date of last treatment).

Dr. Earle's counsel argues that all damage to Ratliff flows from the first unwarranted surgery and that even if the second surgery was unnecessary, as alleged, it would not have occurred but for the first surgery. In support of the implied finding below that the date of injury was ascertainable as the date of the first surgery, appellee cites a back surgery case from the Houston Court of Appeals. *See Desiga v. Scheffey,* 874 S.W.2d 244 (Tex.App.—Houston [14th Dist.] 1994, no writ). Desiga sustained a work-related back injury and sought medical treatment. The first doctor who examined him concluded his back was normal. Unaware of this diagnosis, he sought treatment by another doctor, who ordered further diagnostic testing and referred the patient to Dr. Scheffey. This doctor performed a lumbar luminectomy; the patient continued to experience pain and stated that he was unhappy with the surgery. Three years later, Desiga learned that his pre-surgical records had been reviewed by another neurosurgeon who stated that surgery was unnecessary because the additional diagnostic testing had established only a bruised back. Further, he stated that Scheffey had a reputation for performing unnecessary surgeries and performing them poorly for his own personal gain. Sixteen months after learning of this opinion Desiga filed suit. *See id.* at 246. The Houston court found as a matter of law that the ascertain-

---

2. The third provision of section 10.01 is only applicable when the claim is based upon the hospitalization itself. *See id.*

able date of negligence occurred on the date the unnecessary surgery was negligently performed. *See id.* at 248. The court held that any and all complaints arose out of the unnecessary surgery. *See id.* The resulting damages were not associated with any post-surgical therapy or course of treatment, thus, the last date of treatment was irrelevant to any determination concerning limitations. *See id.* at 249.

The date of a negligently-performed surgery does not always provide an ascertainable date giving rise to a malpractice claim. *Desiga* was shaped by allegations focused solely on the unnecessary surgery and, in that circumstance, the Houston Court of Appeals found an ascertainable date. Likewise, in cases where the allegations of negligence focus solely on the misdiagnosis, the continuing nature of that diagnosis does not extend the tort for limitations purposes. *See, e.g., Bala v. Maxwell,* 909 S.W.2d 889, 892 (Tex. 1995) (holding that limitations began on date doctor misdiagnosed cancer where doctor did not see patient between date of misdiagnosis and date of correct diagnosis); *Rowntree,* 833 S.W.2d at 108 (in failure to diagnose condition, continuing nature of diagnosis does not extend limitations period). In this case, however, the allegations begin with a negligent misdiagnosis, allege unwarranted and unnecessary surgeries, and include a failure to properly warn and advise the patient, during his entire course of treatment, of the risks associated with the implanted devises. The allegations further allege that Dr. Earle misrepresented during the entire course of treatment the quality, characteristics and risks of this procedure and the problems and complications experienced by other patients. Fact issues concerning these allegations were raised in Dr. Mooney's and Ratliff's affidavits.

Dr. Earle objected to portions of Dr. Mooney's affidavit on the grounds that the third full paragraph on page 6 of his affidavit was conclusory with regard to any deviation from the standard of care and that it failed to set

forth the applicable standard of care for orthopaedic surgeons practicing in the San Antonio area on or about November 10, 1993. The trial court sustained the objection and struck the entire paragraph. In doing so, the court apparently applied the new statutory requirements for expert reports to this case rather than those which were in existence at the time this case was filed. *Compare* § 13.01(r)(6) (eff.Sept. 1, 1995) *with id.* at § 13.01(a) (eff.Sept. 1, 1993). The historical and statutory notes following the Medical Liability and Insurance Improvement Act, however, specifically state that the 1995 amendments to the Act "apply only to a health care liability claim filed on or after the effective date of this Act. A health care liability claim filed before the effective date of this Act is governed by the law applicable to the claim as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose." TEX. REV.CIV. STAT. ANN. art. 4590i, hist. & stat. n. at 586 (Vernon Supp.1998).

Under the law in effect in 1994, when this case was filed, an expert's affidavit had to state that the expert had "knowledge of accepted standards of care for the diagnosis, care or treatment of the illness, injury, or condition involved in the claim, that the acts or omissions of the physician or health care provider were negligent and a proximate cause of the injury, harm, or damages claimed." *Id.* at § 13.01(a) (1993).

Dr. Mooney's affidavit, taken as a whole, meets the requirements which apply to this case. As to knowledge of accepted standards of care he stated on page one: "I am familiar with the accepted standards of medical care in Texas for the period of time during which Dr. Stephen Earle treated Michael Ratliff." As to negligent acts or omissions, he stated on page six: "On November 16, 1993, Dr. Earle performed a third back surgery[3] on Mr. Ratliff which was medically unwarranted and thus a deviation from the standard of care. Considering the degree of spinal insta-

---

3. The 1993 surgery to replace the AcroMed device is sometimes referred to by the parties as the second surgery and sometimes as the third surgery. At oral argument, counsel clarified that between the 1991 and 1993 surgeries which are implicated in this cause, another procedure was performed which is also referred to in the medical records as a surgery. That procedure, however, is not the focus of this appeal.

bility created by Mr. Ratliff's first surgery, and the fact that Mr. Ratliff's first set of AcroMed screws and plates resulted in hardware failure with loosening, the insertion of another device was medically unwarranted." As to proximate cause of the injury, Dr. Mooney stated on page 6: "As a result of numerous surgeries, significant instability occurred in Mr. Ratliff's spine with permanent sequelae." The trial court erred in striking the first paragraph of page six as conclusory on the issue of standard of care when other portions of the affidavit itself supported and explained that conclusion.

■ We find that the allegations of this case involve, among other things, elements of both misdiagnosis and mistreatment making it difficult to ascertain a specific date when the malpractice claim arose. The nonmovant's summary judgment evidence controverts Dr. Earle's motion that Ratliff's claims arose on the date of the first surgery in 1991. We further find that under the course of treatment doctrine, Ratliff's claims arose on the date of last treatment. These claims were filed within two months of that date, hence the claims are not barred by limitations. Fact issues exist as to the appropriateness of diagnosis and treatment from 1991 forward. Ratliff's first and second points of error are sustained.

Each of Ratliff's remaining points of error concern whether his non-negligence claims survived the summary judgment. All but one of these points of error concern the application of the appropriate statute of limitations. Even appellee agrees in the conclusion of his brief that the trial court granted summary judgment on the ground that the entire cause of action was premised on the 1991 surgery and on the conclusion that limitations began to run from that date. Ratliff's third, fourth, fifth, and sixth points of error are sustained.

Appellants' seventh and eighth points of error concern the granting of summary judgment on appellants' strict liability and failure to warn claims respectively. Dr. Earle's motion for summary judgment raised these issues in the alternative "and only if such is necessary." Although the summary judgment is broadly stated as "granted on all grounds," Dr. Earle includes a limitations argument under the eighth point and, as stated above, his brief concedes that summary judgment was granted "because appellants' cause of action is barred by limitations." The alternative grounds were, therefore, not the focus of the hearing or the court's order. Even if that were not the case, however, we find that Dr. Earle's conclusory statements do not establish a right to summary judgment on this issue. *See Armbruster v. Memorial Southwest Hosp.*, 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993, no writ). Moreover, his reliance on *Easterly*, a hospital liability case involving a disposable product, is distinguishable. *See Easterly v. HSP of Texas, Inc.*, 772 S.W.2d 211 (Tex.App.—Dallas 1989, no writ) (product was so intimately connected to service provided as to lose its separate character as good). Here the product was a permanently implanted device which the surgeon allegedly utilized in a procedure unauthorized by the FDA. Ratliff's seventh point of error is sustained.

■ On the failure to warn claim, Dr. Earle argues that by listing the minimum requirements for disclosure mandated by the Texas Medical Disclosure Panel, there is a presumption of non-negligence on the issue of informed consent or failure to warn. *See Penick v. Christensen*, 912 S.W.2d 276, 285 (Tex.App.—Houston [14th Dist.] 1995, writ denied). Such presumptions are, however, rebuttable by expert testimony. *Id.* at 287. Ratliff's affidavit cites a number of risks and complications which Dr. Earle did not discuss with him, which he ultimately suffered, which he only learned were known risks after viewing the "20/20" television program on the unapproved uses of Steffee plates, and Ratliff states that if he had known of these risks and complications he would never have consented to the surgeries. Dr. Mooney, having reviewed the Ratliff affidavit and medical records, supplies the necessary expert testimony to rebut the presumption of informed consent. A fact issue as to informed consent has been raised. Ratliff's eighth point of error is sustained.

In sum, appellants' eight points of error are sustained, the summary judgment is re-

versed and the cause is remanded for a trial on the merits. The costs of appeal shall be charged against the appellee.