NO. 07-03-0203-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 5, 2005

_____

TIMOTHY RAY REEVES AND CINDY KAY WALKER
INDIVIDUALLY AND AS HEIRS OF THE ESTATE OF
ANITA SUE BYNUM, DECEASED, APPELLANTS

V.

JOHN ANTHONY GRISWOLD, JR., M.D.,
AND SAMMY ANTHONY DEEB, M.D., APPELLEES

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-513,220; HONORABLE SAM MEDINA, JUDGE

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

This is an appeal from a summary judgment in favor of appellees John Anthony Griswold, M.D. and Sammy Anthony Deeb, M.D. (Dr. Griswold and Dr. Deeb are collectively referred to as "the doctors").[1] We will affirm.

_____

[1] University Medical Center was severed from the action involving the doctors.

Appellants Timothy Ray Reeves and Cindy Kay Walker, the children of Anita Sue Bynum, filed survival and wrongful death claims for medical negligence against the doctors. Anita Bynum was admitted by Dr. Griswold to University Medical Center and, on November 17, 1994, underwent a procedure allegedly directed and performed by the doctors. Appellants allege their mother died as a result of the doctors' medical negligence during this procedure.

Appellants filed suit against the doctors on March 23, 2001. The doctors filed their motion for summary judgment on September 16, 2002, asserting that the plaintiffs' claims were barred by the two-year statute of limitations set forth in section 10.01 of article 4590i of the Texas Revised Civil Statutes. The motion for summary judgment was set for hearing on October 11, 2002.

Appellants filed their response to the motion for summary judgment on October 7, 2002 and alleged they were never informed by the doctors of the true facts concerning their mother's death and it was not until many years later that they learned of the doctors' negligence. They attached the sworn statement of Leslie Radentz, M.D., who was present during the procedure alleged, as well as the affidavit of a retained expert, Ralph D. Patman, M.D. In general, Dr. Radentz testified in her statement that Dr. Deeb improperly performed the medical procedure on Ms. Bynum and that there was an effort by Dr. Deeb and Dr. Griswold to "conceal and cover up the true cause of [Bynum's] death." Attached to Dr. Radentz's statement were copies of Ms. Bynum's death certificate, a "death summary," and an entry from the physician's progress record. All three documents were signed by Dr.

Radentz. Dr. Patman's statement concluded that the doctors performed below the standard of care, resulting in the death of Ms. Bynum.

The doctors objected to the response, arguing it was untimely because it was filed only four days prior to the hearing. The doctors also argued that the testimony of Dr. Radentz was conclusory and that the affidavit of Dr. Patman was improper summary judgment evidence because he had no personal knowledge of the events but merely relied on the conclusory statements of Dr. Radentz. The trial court did not rule on these objections but granted the doctors' motion for summary judgment.

In their first issue on appeal, appellants ask this court to determine whether the trial court erred in granting summary judgment to the doctors in light of appellants' evidence of fraudulent concealment. A defendant moving for summary judgment based on limitations bears the burden of showing that the suit is barred by limitations as a matter of law. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983); *Wilson v. Rudd*, 814 S.W.2d 818, 823 (Tex. App.–Houston [14th Dist.] 1991, writ denied). Section 10.01 of article 4590i provides, in pertinent part:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed . . . .

This section imposes an absolute two-year statute of limitations regardless of when an injured party learns of the injuries. *Waters ex rel. Walton v. Del-Ky, Inc.*, 844 S.W.2d 250, 255 (Tex. App.–Dallas 1992, no writ). However, section 10.01 of article 4590i does not

3

abolish fraudulent concealment as an equitable estoppel to the affirmative defense of limitations under that statute. *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). Proper invocation of fraudulent concealment, therefore, estops a defendant from relying on the statute of limitations as an affirmative defense to a plaintiff's claim. *Id*.

To show entitlement to the estoppel effect of fraudulent concealment, a party must show the defendant had (1) actual knowledge of the wrong; (2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong. *Waters*, 844 S.W.2d at 256; *see Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999). The party seeking to avoid summary judgment on limitations must raise a fact issue on the elements of the fraudulent concealment plea. *Id*.; *Lopez v. Hink*, 757 S.W.2d 449, 450 (Tex. App.–Houston [14th Dist.] 1988, no writ). "Extremely specific facts" are required to prevail on a fraudulent concealment contention. *Desiga v. Scheffey*, 874 S.W.2d 244, 253 (Tex. App.–Houston [14th Dist.] 1994, no writ); *see also Wilson*, 814 S.W.2d at 823 (stating there is a burden on plaintiff's part to produce evidence that the defendants had actual knowledge of the wrong and a purpose to conceal such knowledge).

We conclude the evidence appellants attached to their summary judgment motion response[2] was not sufficient to raise a fact issue as to appellants' claim of fraudulent

---

[2] Normally, we would first determine whether appellants' response to the doctors' motion for summary judgment was properly before the trial court and, therefore, properly before us. *Pinnacle Data Services, Inc. v. Gillen*, 104 S.W.3d 188, 192 (Tex. App.–Texarkana 2003, no pet.). The Texas Rules of Civil Procedure provide: "Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." TEX. R. CIV. P. 166a(c). Permission to file a late response may be reflected in a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary

4

concealment. We look to the three requirements of fraudulent concealment: (1) the defendant had actual knowledge of the wrong; (2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong. *Waters*, 844 S.W.2d at 256.

In her sworn statement, Dr. Radentz detailed the events of an improperly performed placement of a central venous catheter which she opines caused the death of Ms. Bynum. Dr. Radentz further indicated that, after the procedure, she saw Dr. Griswold talking on the phone to notify a family member of Ms. Bynum's death "and then after he completed his call, he was quite satisfied, or happy might even be the word to use, and said that there was not going to be an autopsy, that the family did not want an autopsy. And he seemed very relieved by this." Dr. Radentz testified that there was "an intentional course of conduct on the part of the team involved to cover up and conceal the true cause of death of Anita

---

judgment hearing. *Neimes v. TA*, 985 S.W.2d 132, 138 (Tex. App.–San Antonio 1998, no pet.). The Texas Supreme Court has consistently held that, without evidence in the record indicating that a late-filed summary judgment response was filed with leave of court, it is presumed the trial court did not consider the response, and it cannot be considered on appeal. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996); *INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985).

Although the doctors raised this point in their Objections and Reply to Plaintiffs' Response to Motions for Summary Judgment, the doctors have not raised this issue in their brief on appeal. When a party files a document by mail, it invokes the "mailbox rule" in Rule 5 of the Texas Rules of Civil Procedure and the document is considered filed on the day it is postmarked by the post office. When a party uses the mail, a document will be considered timely filed on the day of the postmark if: (1) the document was sent by first-class United States mail and properly stamped; (2) the document was addressed to the proper clerk or the proper court and sent to the correct address; (3) the document was mailed on or before the due date; and (4) the document arrived at the court within ten days. TEX. R. CIV. P. 5. A legible postmark affixed by the United States Postal Service shall be prima facie evidence of the date of mailing. *Id*. Although we have insufficient information before us to make a determination as to the application of the "mailbox rule" in this case, we presume appellees did not raise the issue of a late-filed response on appeal because appellants satisfied the "mailbox rule." Therefore, we will consider the response.

5

Bynum . . . by blocking the autopsy that should have been performed." Dr. Radentz also noted the "systematic absence of any mention of the true cause of death... as reflected in the records" which represented a "concerted effort . . . to conceal and cover up the cause of death of Anita Bynum on November 17th, 1994." Dr. Radentz further indicated that the death summary, death certificate, and physician's progress record did not accurately state the true cause of Anita Bynum's death. Dr. Radentz testified she had a conversation with Dr. Deeb regarding the death certificate and told him that she was not comfortable with the cause of death listed. She indicated Dr. Deeb responded he would "take care of it or words to that effect."

In preparation of his affidavit, Dr. Patman reviewed the records of Anita Bynum from University Medical Center from October 31, 1994 through November 17, 1994, the sworn statement of Dr. Radentz, and the death certificate. Based upon a review of these documents, Dr. Patman opined that the care provided Bynum fell short of the standard of care, leading to her death. Dr. Patman also stated that "[b]ased upon the records available, there was an intentional effort to prevent the performance of an autopsy which would, more likely than not, discover the true cause of death of Ms. Bynum." Dr. Patman concludes that "[i]f the family was not honestly and accurately informed of the actual circumstances surrounding Ms. Bynum's death, the standard of care was breached in a deceptive, fraudulent manner."

Considering the evidence in the light most favorable to the non-movants and taking the contents of Dr. Radentz's statement and Dr. Patman's affidavit as true, *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997), and assuming, *arguendo*,

6

that they raise a fact issue on the first two elements of fraudulent concealment, we conclude appellants have failed to bring forth competent summary judgment evidence of the last element – that the defendants had a fixed purpose to conceal a wrong. There is a burden on plaintiff's part to bring evidence that a defendant had actual knowledge of the wrong and a purpose to conceal such knowledge. *Wilson*, 814 S.W.2d at 823.

Appellants point to the statements of Drs. Radentz and Patman that the doctors "blocked" an autopsy of Anita Bynum.[3] But Dr. Radentz does not testify that she heard Dr. Griswold's explanation to the family regarding the cause of Ms. Bynum's death or, indeed, that she heard any of Dr. Griswold's telephone conversation with the family. She testifies that Dr. Griswold reported the family "did not want an autopsy." The testimony does not provide evidence that anyone prevented, dissuaded or otherwise "blocked" the family from seeking an autopsy.[4] We do not find in Dr. Radentz's description of Dr. Griswold's telephone conversation probative evidence that the doctors had a purpose to conceal knowledge of a wrong.

---

[3] Conclusory statements unsupported by facts are not competent summary judgment evidence. *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003). The statements of Dr. Radentz and Dr. Patman that the doctors engaged in a concerted effort to conceal the true cause of Ms. Bynum's death and to prevent the performance of an autopsy fall into that category.

[4] The record contains no evidence from Bynum's family members regarding conversations with the doctors or the family's decision not to seek an autopsy.

Appellants also rely on the absence of notation of the "true" cause of death in the death summary, death certificate and medical records[5] to demonstrate a fixed purpose to conceal by the doctors. Appellants do not explain, however, how the two pages from the medical records, signed by Dr. Radentz, exhibit a fixed purpose by the appellee doctors to conceal knowledge of a wrong. None of the medical records in the summary judgment record are signed by, or mention, Dr. Deeb. The death summary is signed by Dr. Griswold and Dr. Radentz, but there is no evidence Dr. Griswold was present during the procedure or was made aware of the allegedly negligent actions of Dr. Deeb.[6] Dr. Radentz's statement to Dr. Deeb that she was not comfortable with the cause of death listed on the death certificate and his response that he "would take care of it or words to that effect" do not provide evidence of a fixed purpose to conceal. In the context of Dr. Radentz's testimony, it requires surmise and speculation to conclude that Dr. Deeb's reported response that he "would take care of it" suggests concealment. Appellants' evidence concerning the medical record does no more, even circumstantially, than raise a suspicion that the appellee doctors had a fixed purpose to conceal the wrong, *see Kindred v. Con/Chem, Inc.* 650 S.W.2d 61, 63 (Tex. 1983), and is insufficient to raise an issue of fact on that element of fraudulent

---

[5] In his affidavit, Dr. Patman indicates that "[o]n November 17, 1994 at 1800 hours, the nurses' notes reflect that Dr. Nguyen, Dr. Radentz and Dr. Deeb were at Ms. Bynum's bedside attempting to manipulate the J wire concerning her central venous catheter." These notes are not part of the summary judgment record, but Dr. Patman's quote provides at least some evidence that there are notes in the medical records regarding the procedure in question.

[6] The absence of such evidence also would, as to Dr. Griswold, negate the second element of fraudulent concealment, the defendant's knowledge of the wrong.

concealment. *See Desiga*, 874 S.W.2d at 254. Appellants' first issue on appeal is overruled.

In their second issue on appeal, appellants ask us to determine whether the trial court erred in granting summary judgment to the doctors in light of appellants' evidence that the doctors' negligence was not discovered until after the passage of the two-year statute of limitations and does the abrogation of the discovery rule in medical negligence cases violate the open courts provision of the Texas Constitution. The discovery rule is a judicially constructed test to determine when a plaintiff's cause of action accrued. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). As noted above, section 10.01 of article 4590i of the Texas Revised Civil Statutes imposes an absolute two-year statute of limitations regardless of when an injured party learns of the injuries. *Waters*, 844 S.W.2d at 255.

Article I, section 13 of the Texas Constitution provides:

> All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have due course of law.

This provision is premised on the rationale that the legislature has no power to make a remedy by due course of law contingent on an impossible condition. *Moreno*, 787 S.W.2d at 355. To establish a right to redress under the open courts provision, a litigant must show (1) that he has a cognizable common law cause of action, and (2) that restriction of the claim is unreasonable and arbitrary when balanced against the statute's purpose. *Diaz v. Westphal*, 941 S.W.2d 96, 100 (Tex. 1997). The doctors contend that the open courts

9

doctrine does not apply because appellants cannot satisfy the first element of the open courts test.  We agree.

At common law, no personal injury cause of action survived to a deceased tort victim's heirs, and the heirs had no claim for their own losses resulting from the tortious act. *Bala v. Maxwell*, 909 S.W.2d 889, 893 (Tex. 1995); *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 403 (Tex. 1993).   Thus, appellants' claims would have died with Anita Bynum had they not been preserved by the legislature in the wrongful death and survival statutes.  *Id.*; *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 845 (Tex. 1990);  TEX. CIV. PRAC. & REM. CODE §§71.001 *et seq.* and 71.021.   The appellants' remedy, therefore, was conferred by statute, not by the common law.  *Id.*  Because appellants have no common law right to bring either a wrongful death or survival action, they cannot establish an open courts violation.  *Bala*, 909 S.W.2d at 893; *Diaz*, 941 S.W.2d at 101.  Appellants' second issue on appeal is, therefore, overruled.

As a matter of law, neither the doctrine of fraudulent concealment nor the open courts provision applies to toll limitations under the facts of this case.  The judgment of the trial court is affirmed.

James T. Campbell
Justice