**Ray and Rebecca COBB, Appellants,**

v.

**DALLAS FORT WORTH MEDICAL CENTER—GRAND PRAIRIE, Appellee.**

**No. 10–99–086–CV.**

Court of Appeals of Texas, Waco.

May 30, 2001.

---

31. *Taylor*, 39 S.W.3d at 412; *Pedraza*, 960 S.W.2d at 342; *Armstrong*, 881 S.W.2d at 57.

32. *Taylor*, 39 S.W.3d at 412; *Aguilar*, 39 S.W.3d at 248.

33. *Aguilar*, 39 S.W.3d at 248.

34. *Id.; Armstrong*, 881 S.W.2d at 57.

35. *See Aguilar*, 39 S.W.3d at 248–49.

Jay C. Vecchio, Vecchio & Vecchio, Grand Prairie, for appellant.

E. Earl Harcrow, Craig M. Price, Karen Williams Altaras, Haynes and Boone, LLP, David J. Escobar, Shannon, Gracey, Ratliff & Miller, LLP, Fort Worth, for appellee.

Before Chief Justice DAVIS, VANCE and GRAY, Justices.

## OPINION

DAVIS, Chief Justice.

Ray and Rebecca Cobb appeal from a summary judgment rendered in favor of Dallas Fort Worth Medical Center–Grand Prairie (DFWMC). The Cobbs claim in six points that: 1) the trial court erred in granting DFWMC's motion for summary judgment because genuine issues of material fact exist as to their causes of action for negligence, gross negligence, strict products liability, implied and express warranties and the DTPA; 2) the trial court erred in sustaining DFWMC's objections and special exceptions to their summary judgment response; 3) DFWMC's "no-evidence" summary judgment motion does not specifically challenge the evidentiary support for their claims as required by Rule 166(a)(i) of the Texas Rules of Civil Procedure; and 4) they brought forth more than a scintilla of evidence to raise a genuine issue of material fact on their negligence, gross negligence, and DTPA claims in response to DFWMC's no-evidence motion.

## Background

Rebecca Cobb suffers from severe back pain and weakness. Dr. Jeffery Carter examined her and diagnosed her condition as being caused by an internal disc disruption in her lower back. He recommended that she have surgery to repair the damaged disk, which included insertion of pedicular hardware in her back. Dr. Carter performed the surgery with Dr. James Pollifrone assisting and Mark Buckley acting as scrub technician.

Several days later Dr. Carter discovered that the screws used to install the pedicular hardware in Mrs. Cobb's back were made for a child patient and were not safe for use in a patient of Mrs. Cobb's weight and size. Dr. Carter warned Mrs. Cobb that she was at great risk of the screws shifting and possibly causing greater injury. He recommended that she have additional surgery to replace the pediatric screws with screws of the correct size.

Mr. and Mrs. Cobb filed suit against Drs. Carter and Pollifrone and DFWMC. DFWMC filed a motion for summary judgment which the trial court granted and then severed from the Cobbs's claims against the remaining defendants.

## Deposition Excerpts

The Cobbs claim in point four that the trial court erred in sustaining DFWMC's objections to their summary judgment proof. The trial court excluded deposition excerpts from Mark Buckley and Dr. Pollifrone based on lack of authentication.

██ The Texas Supreme Court has held that unfiled deposition excerpts do not require authentication to be used as summary judgment evidence. *See McConathy v. McConathy,* 869 S.W.2d 341, 342 (Tex.1994). The Supreme Court stated that "authentication is not necessary and is not required under the present rules." *Id.*

Therefore, the trial court abused its discretion by excluding the deposition excerpts in this case. We sustain point four.

### Traditional Summary Judgment Standard of Review

The standards for reviewing a summary judgment are well established. *See Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of law. *Id.* at 548–49. The reviewing court must accept all evidence favorable to the non-movant as true. *Id.* at 549. Every reasonable inference must be indulged in favor of the non-movant and all doubts resolved in its favor. *Id.*

### No–Evidence Summary Judgment Standard of Review

■■■ A party may move for summary judgment under Rule 166a(i) on the basis that there is no evidence of an essential element of the adverse party's cause of action. *See* Tex.R. Civ. P. 166a(i). Rule 166a(i) states in pertinent part that "[t]he motion must state the elements as to which there is no evidence." Tex.R. Civ. P. 166a(i). Recently, this Court stated that a party is not allowed to bring a general no-evidence motion for summary judgment. *See Bomar v. Walls Regional Hosp.*, 983 S.W.2d 834, 840 (Tex.App.—Waco 1998), *rev'd on other grounds,* 9 S.W.3d 805 (Tex. 1999). To defeat a no-evidence summary judgment motion, a party need not "marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." Tex.R. Civ. P. 166a(i) cmt.

■■■ We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *See Robinson v. Warner–Lambert,* 998 S.W.2d 407, 410 (Tex.App.—Waco 1999, no pet.); *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

### Negligence

In point one, the Cobbs claim that the trial court erred in granting DFWMC's summary judgment motion because genuine issues of material fact exist on their negligence and gross negligence claims. In point five, the Cobbs claim that the trial court erred in granting DFWMC's no-evidence summary judgment motion because DFWMC did not specifically challenge the evidentiary support of the Cobbs's claims as required by Rule 166a(i). And in point six, the Cobbs argue that summary judgment was improper because they brought forth more than a scintilla of evidence on their claims of negligence and gross negligence. These points all relate specifically to the Cobbs's claims of negligence and gross negligence, so we address them together.

The no-evidence section of DFWMC's motion for summary judgment alleges that the Cobbs are unable to produce any evidence on standard of care, breach of standard of care, and proximate cause. Because DFWMC properly segregated the no-evidence portion of its motion from the remainder of the motion and because it properly identified the elements on which it contends there is no evidence, we overrule point five.

■■■ In this case, the plaintiff must establish four elements to prevail on a negligence cause of action: 1) a duty by the hospital to act according to an applicable standard of care; 2) a breach of the applicable standard of care; 3) an injury; and 4) a causal connection between the breach of care and the injury. *See Denton Reg.*

*Med. Ctr. v. LaCroix,* 947 S.W.2d 941, 950 (Tex. App—Fort Worth 1997, pet. dism'd by agr.).

## Duty and Standard of Care

Hospitals have a duty to supply the required equipment and instrumentalities for the care of their patients. *See Tenet Health Ltd. v. Zamora,* 13 S.W.3d 464, 471 (Tex.App.—Corpus Christi 2000, dism'd w.o.j.); *Mills v. Angel,* 995 S.W.2d 262, 267 (Tex.App.—Texarkana, 1999, no pet.); *Baptist Mem. Hosp. v. Marrable,* 244 S.W.2d 567, 568 (Tex.Civ.App.—San Antonio 1951, no writ); *Medical & Surgical Mem. Hosp. v. Cauthorn,* 229 S.W.2d 932, 934 (Tex.Civ.App.—El Paso, 1949, no writ).

In a negligence case, the applicable standard of care is a threshold issue that the plaintiff must establish before the factfinder can determine if the defendant deviated from the standard of care to a degree that constitutes negligence. *See LaCroix,* 947 S.W.2d at 950; *St. Paul Med. Ctr. v. Cecil,* 842 S.W.2d 808, 812 (Tex.App.—Dallas 1992, no writ). The standard of care with regard to non-medical, administrative, ministerial, or routine care at a hospital need not be established by expert testimony. *Id.*

Dr. Pollifrone stated in his affidavit that Dr. Carter ordered the pedicular hardware that was to be installed in Mrs. Cobb's back from Ron Grounds. Ron Grounds, manufacturer's representative for Danek, stated in his affidavit that he delivered a complete "TSRH universal set" to DFWMC which contained screws of different sizes, including the correct size for Mrs. Cobb. Mark Buckley testified in his deposition as to how the complete set, including all the accompanying screws, is handled once delivered to the hospital. He stated that the set is first delivered to central supply. Then, it is sterilized and delivered to the operating room. He testi-fied that the hospital is responsible for delivering the complete sterilized set to the operating room from sterile supply and that there was no reason for the surgeon to expect that all the parts were not there.

The evidence adduced by the Cobbs is sufficient to raise a fact issue underlying DFWMC's duty to supply Mrs. Cobb with the correct pedicular hardware for use during her surgery.

## Breach

To establish the hospital's liability based on negligence, the plaintiff must prove that the hospital breached the applicable standard of care. *Mills,* 995 S.W.2d at 268. Mark Buckley first testified as to the standard procedure to provide the necessary appliances for a patient during surgery. He then testified that only part of the complete TSRH set was present in the operating room for Mrs. Cobb's surgery. Dr. Pollifrone testified in his deposition that the pedicle screws provided by the hospital were in fact the incorrect screws. This evidence raises a fact issue on breach of the standard of care owed by DFWMC.

## Causation and Injury

Dr. Pollifrone testified that Mrs. Cobb will require additional surgery to replace the incorrect pedicle screws. He states that without the additional surgery, Mrs. Cobb is in danger of severe injury including paralysis. She is limited by the prior surgery to lifting no more than two pounds. This evidence is sufficient to raise a fact issue on the elements of causation and injury.

## Summary Judgment

With regard to the traditional motion for summary judgment on negligence, we find that DFWMC failed to establish its entitlement to judgment as a matter of law. The

traditional motion for summary judgment on negligence should have been denied.

The no-evidence motion with regard to the Cobbs's claims of negligence should have been denied. The Cobbs have produced more than a scintilla of evidence underlying the duty by the hospital to act according to an applicable standard of care, breach of the applicable standard of care, and causation. Accordingly, points one and six are sustained with regard to the Cobbs's negligence claims.

### Gross Negligence

A trial court cannot grant summary judgment on a ground not expressly presented in the summary judgment motion. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996). We consider only those grounds "the movant actually presented to the trial court" in the motion. *Id.*

Aside from the negligence issues discussed above, DFWMC did not present any specific argument on gross negligence in either its traditional or no-evidence summary judgment motions. Because DFWMC presented no ground for summary judgment on gross negligence and in view of our holding on the negligence cause of action, points one and six with regard to gross negligence are sustained.

### Strict Liability, Implied Warranty, and Express Warranty

To be held strictly liable, the law requires that one must sell a product in a defective condition and must be engaged in the business of selling such a product. *See* RESTATEMENT (SECOND) OF TORTS, § 402A (1965). The concept of strict liability generally does not apply to defective services. *See Nevauex v. Park Place Hosp.,* 656 S.W.2d 923, 926 (Tex. App.—Beaumont 1983, writ. ref'd n.r.e.). Generally, hospitals are not engaged in the business of selling the products or equipment used in the course of providing medical services. *See Thomas v. St. Joseph Hosp.,* 618 S.W.2d 791, 796–97 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ. ref'd n.r.e.). Consequently, the products used are intimately and inseparably connected with the provision of medical services. *See Easterly v. HSP of Tex.,* 772 S.W.2d 211, 213 (Tex.App.—Dallas 1989, no writ.).

In a case of first impression, the court in *Thomas* held that when a hospital supplies a defective product unrelated to the essential professional service, the hospital may be held strictly liable. *See Thomas,* 618 S.W.2d at 796–97. The court in *Easterly* distinguished *Thomas* and held that where the patient cannot provide a product used in the course of medical services, then the product loses its separate character as a good and is part of the service. *See Easterly,* 772 S.W.2d at 213. The appellants cite *Ratcliff v. Earle* for the proposition that disposable products are distinguishable from those permanently attached. 961 S.W.2d 591, 597 (Tex.App.—San Antonio 1997, no pet.). However, the court in *Ratcliff* reversed the trial court on other grounds and did not specify what effect distinguishing disposable products from permanently attached products would have on the liability of a hospital.

In this case, the Cobbs allege that the transpedicular hardware and screws installed in Mrs. Cobb are defective because they are the wrong size and non-FDA approved. They argue that the transpedicular "set" is separable from the services of DFWMC and thus DFWMC may be strictly liable.

DFWMC is not in the business of independently selling "TSRH sets" to the public, nor is it in the business of providing them outside of its primary purpose of providing medical facilities. Also, Mrs.

Cobb could not have provided her own "set" for use during her surgery. Accordingly, we hold that the allegedly defective pedicular hardware and screws installed in Mrs. Cobb's back are inseparable from the services rendered by the hospital. Therefore, DFWMC established its entitlement to judgment as a matter of law on the Cobbs's strict liability claim. This holding necessarily forecloses the Cobbs's claims of implied and express warranties under the DTPA as well. *See Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995); *Easterly,* 772 S.W.2d at 214. Accordingly, we overrule points two and six with regard to strict liability in tort and implied and express warranties, separately, or under the DTPA.

## DTPA

■ The Medical Liability and Insurance Improvement Act (MLIIA) specifically prohibits negligence actions under the DTPA against medical providers. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 12.01(a). However, the Texas Supreme Court has held that where the DTPA claim is not based on the medical provider's breach of the applicable standard of care, section 12.01(a) does not preclude a suit for damages under the DTPA. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex. 1994).

■ The Cobbs allege that DFWMC is liable under the DTPA for unconscionable misrepresentations made to Mrs. Cobb with regard to the FDA-approved status of the transpedicular hardware and the medical necessity of implanting the device. DFWMC argues that the Cobbs produced no evidence of any misrepresentations by DFWMC with regard to Mrs. Cobb's surgery.

■ The Cobbs presented the affidavits of Dr. Pollifrone, Mark Buckley and Ron Grounds as well as copies of the hospital consent form and their fourth amended original petition as summary judgment proof. However, a party may not rely on their own pleadings as competent summary judgment proof. *See Laidlaw Waste Systems v. City of Wilmer,* 904 S.W.2d 656, 660–61 (Tex.1995). Thus, we disregard the Cobbs's fourth amended original petition as summary judgment evidence.

The proof presented by the Cobbs does not reveal any representations made by DFWMC with regard to the screws and hardware installed in Mrs. Cobb's back or with regard to the medical necessity of the surgery. Thus, the Cobbs have failed to produce any evidence in response to DFWMC's no-evidence motion on their DTPA claim. Accordingly we overrule point three and point six with regard to any remaining DTPA claims.

## Conclusion

We affirm the judgment of the trial court on the Cobbs's strict liability, implied and express warranties and DTPA claims. We reverse the judgment of the trial court on their negligence and gross negligence claims and remand this cause to the trial court for further proceedings consistent with this opinion.

Justice VANCE concurring.

Justice GRAY dissenting.

VANCE, Justice, concurring.

I join Chief Justice Davis' opinion and agree that this case should be remanded for trial. I write separately to discuss the issues presented in light of the Medical Liability and Insurance Improvement Act (the "Act"). TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2001).

Rebecca and Ray Cobb sued the Hospital and two doctors under the Act in cause 17–154790–94. *Id.* The order granting the

Hospital's motion for summary judgment dismisses the Cobbs' claims against the Hospital. Apparently to make that order final, those claims were severed into a new cause, No. 17–177355–99, and were again dismissed. Appeal was taken from the second order.[1]

## MEDICAL LIABILITY AND INSURANCE IMPROVEMENT ACT

We should be addressing such claims in light of the Act, by which the Legislature has given us several definitions to consider:

"Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

"Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

"Medical care" means any act defined as practicing medicine in Article 4510, Revised Civil Statutes of Texas, 1925, as amended, performed or furnished, or which should have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's care, treatment, or confinement.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(2), (3), (4), (6) (Vernon Supp. 2001).

## NATURE OF THE CLAIMS

Note should be taken of the difference between the Act's definitions of "health care," which can be delivered by any "health care provider," and "medical care," which can be delivered only by one licensed to practice medicine. *Id.* § 1.03(a)(2), (3), (6). Using those definitions Rebecca Cobb is not asserting a claim for "medical care" against the Hospital.

One may question whether Rebecca Cobb is asserting a "health care liability claim" against the Hospital. *Id.* § 1.03(a)(4). The answer depends on the meaning ascribed to the word "act" in the definition of "health care." *Id.* § 1.03(a)(2). Given its broadest definition, "act" would include everything a hospital does with respect to a patient because every act claimed to have been done or omitted could be said to have been "performed or furnished, or which should have been performed or furnished, by [a] health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.*

The Hospital is a "health care provider" under the statutory definition. *Id.*

1. I question whether a dismissal was proper. Although dismissal might be the proper disposition on a summary-judgment motion that established that the plaintiff had no right to maintain the suit, the granting of a defendant's summary-judgment motion based on evidentiary considerations should result in a take-nothing judgment.

§ 1.03(a)(3). But hospitals furnish many services. They employ other "health care providers," such as nurses and pharmacists, to provide "health care" to patients. They also employ many persons normally thought to be "non-providers," who work at such things as administration, building maintenance, food-service, laundry, and other tasks that make the institution operate efficiently. The Act's definition of "health care provider" might be read, however, to include such "non-providers" because it includes all officers, employees, and agents of providers who are acting in the course and scope of their employment. *Id.*

The question that naturally arises is whether every "act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement" would lead to a "health care liability claim" under the Act, even if performed by a staff-member who is a "non-provider" in his or her own right.[2] TEX.REV.CIV. STAT. ANN. art. 4590i § 1.03(a)(2). Giving these definitions their most expansive scope, the cook in a hospital would be classified as a "health care provider" delivering "health care." The maintenance electrician repairing a light fixture in the lobby would be classified as a "health care provider" delivering "health care." The legislature could not have so intended.

## REVIEW OF THE SUMMARY JUDGMENT

How should we analyze the trial court's rejection of the Cobbs' claims? As Chief Justice Davis points out, the review standard tells us to accept all evidence favorable to the non-movants, the Cobbs, as true and indulge every reasonable inference and resolve all doubts in their favor. Although a doctor selected the hardware installed in her back from the items available in the operating room, the summary-judgment evidence shows that the hardware implanted in Rebecca's back was among items delivered to "central supply" at the Hospital, processed and sterilized, then taken to the operating room. There, the hardware was laid out for use during the operation. *More items of hardware were delivered to the hospital, however, than were available in the operating room at the time of the surgery.*

What the summary judgment evidence does not show is the name or status of the hospital's employee or employees who accepted delivery of the hardware, sterilized it, and delivered it to the operating room. Indulging reasonable inferences and resolving doubts in the Cobbs' favor, we may assume that those were "non-medical" personnel, *i.e.*, persons who are not "providers" under the Act in their own right. Using that assumption, the claim should be viewed as an ordinary, non-medical negligence case, even though it occurred in a medical setting.

ELEMENTS OF THE CLAIM

The elements of a medical negligence claim are: (1) a duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach and the injury. *Reynosa v. Huff*, 21 S.W.3d 510, 513 (Tex.App.—San Antonio 2000, no pet.); *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex.App.—El Paso 2000, no pet.). Little has been said in the decisions

---

**2.** Because "health care liability claim" is defined in terms of a departure from accepted standards with respect to a "patient," a claim of breach of duty by a "non-provider" employee of a hospital to a non-patient, *e.g.*, a visitor, is not covered by the Act. *Id.* § 1.03(a)(3).

to date about how these elements relate to the Act.

However, the elements of a claim based on general negligence concepts are: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

DUTY

Duty is always the threshold inquiry, which is a question of law for the court to decide. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The operative question in this appeal is: did the hospital have a duty to Rebecca Cobb with respect to the pedicular hardware kit that was used in her operation. I have no difficulty in finding a duty under general negligence principles, considering the risk, foreseeability, and the likelihood of injury weighed against the social utility of the hospital's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the hospital. *See Van Horn v. Chambers*, 970 S.W.2d 542 (Tex.1998) (citing the balancing test of *Greater Houston Transp.*, 801 S.W.2d at 525 (Of all these factors, foreseeability of the risk is "the foremost and dominant consideration.")).

NEGLIGENCE

Under this record, a fact issue exists about whether the Hospital breached its duty and thereby contributed to Rebecca Cobb's injuries.

## SUMMARY

Because the summary judgment evidence raises genuine issues of material fact about a breach of duty by the Hospital and damages proximately resulting from the breach, I join in the decision to reverse the summary judgment and remand the

cause for trial. *El Chico*, 732 S.W.2d at 311.

GRAY, Justice, dissenting.

Whatever can be said of the negligence of the hospital, if any, by not getting the entire transpedicular device to the operating room, it cannot be said that the hospital's negligence was the cause of Mrs. Cobb's problems. The only person who put the transpedicular device in her back was the doctor. The doctor was practicing medicine; the hospital was not. The sole responsibility for determining what medical device, including the component parts thereof, that should go into a patient, has to be the doctor.

In the normal scheme of surgery, it seems beyond dispute, that the doctor should be the sole person charged with the duty to determine that everything necessary to perform and complete the surgery is present before the patient is cut open. For an operation requiring the placement of a medical device inside a patient's body, a device that is the very essence of the purpose of the operation, there could be no more fundamental duty than to determine that the proper device is in the operating room and ready to be placed in the patient's body, before the first cut is made.

Cobb seeks to hold the hospital liable. In response to the hospital's no evidence summary judgment motion, her only assertion regarding the hospital's negligence is that the hospital "was independently and directly negligent (and in turn grossly negligent) for its employees' failure to verify that the instrumentation and hardware products used on PLAINTIFF REBECCA COBB were the correct size, and appropriate for an adult female."[1] Such a

---

1. Under *McConnell* and its progeny, this is the only ground of recovery against which we

must evaluate the propriety of granting the summary judgment. *McConnell v. Southside*

characterization of the hospital's duty would cause the hospital to practice medicine. A hospital cannot practice medicine, only a licensed physician can.

The practice of medicine was defined at the time of Ms. Cobb's surgery as follows:

(12) "Practicing medicine." A person shall be considered to be practicing medicine within this Act:

(A) who shall publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof; or

(B) who shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation.

TEX.REV.CIV. STAT. ANN. art. 4495b, 1.03(a)(12) (Vernon Supp.1993) (repealed). Current text defining "practicing medicine" is located at TEX. OCC.CODE ANN. § 151.002(13) (pamp.2001).

Only a person [2] can "practice medicine"; a hospital cannot. The Texas Medical Act makes no provisions for the licensing of a hospital to practice medicine. *See Clements v. Conard,* 21 S.W.3d 514, 522–23 (Tex.App.—Amarillo 2000, pet. denied). Cobb's claim is for "medical care" as defined by the act. Accordingly, I would hold that because Cobb's only assertion of the hospital's negligence relates to duties that constitute the practice of medicine and thus are solely the physician's duty rather than the hospital's, Cobb has failed to raise a fact issue on whether the breach of the hospital's duty caused her injury. Because the majority determines that Cobb presented some evidence on each of the elements of a negligence theory of recovery against the hospital, I respectfully dissent.

*Independent School District,* 858 S.W.2d 337 (Tex.1993).

**2.** According to the Texas Medical Act at the time, "person" meant an individual unless otherwise expressly made applicable to a partnership, association, or corporation. TEX. REV.CIV. STAT. ANN. art. 1.03(a)(10) (Vernon Supp.1993) (repealed). Current text defining "person" is located at TEX. OCC.CODE ANN. § 151.002(11) (pamp.2001).