Opinion issued May 3, 2007


 








In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00228-CV






IRVING W. MARKS, Appellant


V.


ST. LUKE'S EPISCOPAL HOSPITAL, Appellee






On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2002-14353






OPINION ON REMAND

 Appellant, Irving W. Marks, appeals from a final order dismissing his claims
against appellee, St. Luke's Episcopal Hospital ("St. Luke's"), for failure to file
expert reports as required by statute for health care liability claims. In our original
opinion, we held that appellant's underlying complaint in his original petition related
to premises liability, not medical liability, and that appellant's complaint was
governed by an ordinary standard of care. We reversed the trial court's order
dismissing appellant's claims and remanded the case to the trial court for further
proceedings. (1) 

 Subsequent to our opinion, the Texas Supreme Court concluded that a patient's
claims that a nursing home's negligence in failing to provide adequate supervision
and nursing services proximately caused her injuries from a sexual assault by another
patient could be characterized as a departure from accepted standards of safety and
were therefore governed by the Medical Liability Insurance Improvement Act (the
MLIIA). (2) See Diversicare General Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex.
2005). On St. Luke's petition for review of our opinion, the supreme court vacated
our judgment and remanded the case for further consideration in light of that Court's
decision in Diversicare. (3) 

 On remand, we must first consider whether, in light of Diversicare, appellant's
complaint is governed by the MLIIA. Because we conclude that appellant's original
petition asserted a departure from accepted safety standards and is therefore a health
care liability claim, we must also consider whether the trial court abused its discretion
in denying appellant's motion for a grace period in which to file his experts' reports
to support his claim. We hold that the trial court did not abuse its discretion and
affirm the trial court's judgment. 

Statement of Facts

 In his original petition, appellant alleged the following facts: 

 5. On or about March 24, 2000, Irving Marks, a 66-year old
man, suffered severe injuries after a fall from his hospital bed at St.
Luke's. 


 6. Mr. Marks was admitted to St. Luke's on March 17, 2000,
to undergo treatment for chronic intractable failed back symptomatology
and intractable radiculopathy after five lumbar operations failed to cure
Mr. Marks' severe back problems. 


 7. On March 17, 2000, Mr. Marks underwent surgery to
implant an intrathecal morphine pump catheter. Immediately following
his surgery, Mr. Marks began his morphine treatment with an initial
dose of .25 milligrams, and Mr. Marks' morphine doses were raised
incrementally up to four milligrams on the ninth day.


 8. After his surgery and his morphine treatment, Mr. Marks'
condition improved drastically until Mr. Marks fell the night of March
24, 2000. 


 9. At the time of his fall, Mr. Marks was getting up from his
hospital bed in the middle of the night, and Mr. Marks was in an upright
position sitting at or near the foot of his hospital bed. Mr. Marks placed
his hand on the hospital bed's footboard to push himself up to a standing
position. As he was pushing himself up, the hospital bed's footboard
fell off causing Mr. Marks to fall to the floor. 


 10. Mr. Marks suffered severe personal injuries as a result of
the fall. 

 Appellant asserted that St. Luke's "breached the duty of ordinary care owed to
Mr. Marks" in the following ways: 

 a. By failing to properly train and supervise any and all agents,
employees, servants, and nursing staff when caring for Mr. Marks
to prevent and protect him from falls and injuries; 


 b. By failing to provide Mr. Marks with the assistance he required
for daily living activities;


 c. By failing to provide Mr. Marks with a safe environment in which
to receive treatment and recover; and 


 d. By providing Mr. Marks with a hospital bed that had been
negligently attached and assembled by [St. Luke's] employees,
agents, servants or nursing staff.


Appellant did not file any expert's report within 180 days of filing his original
petition. Appellant's second amended petition alleged additional acts of negligence,
including the following: 

 d. Failing to properly monitor Mr. Marks; 


 . . . . 


 h. Failing to ensure that adequate policies and procedures were in
place for the hiring, training and supervision of the nursing staff
at the hospital; and 


 i. Failing to ensure that the person(s) hired to work at the hospital
had a sufficient understanding of safety concerns for the patients
and was competent to formulate policies and procedures for
patient safety and quality assurance.


Believing that these additional claims might have asserted health care liability claims
under Texas law, appellant filed two experts' reports within 180 days of filing his
second amended petition. St. Luke's filed a motion to dismiss, arguing that the
claims asserted by appellant in his original petition also constituted health care
liability claims as defined in the MLIIA, and that appellant had failed to provide
expert reports within 180 days of the original filing, as required by that statute. After
the hearing on St. Luke's motion, appellant filed a motion to extend the time for filing
the reports, arguing that he did not intend the original petition to assert a heath care
liability claim and therefore believed that expert reports were not required. The trial
court found that the original petition did assert health care liability claims, denied
appellant's motion to extend the time to file expert reports, and granted St. Luke's
motion to dismiss.

Standard of Review

 A dismissal under the MLIIA is generally reviewed under an abuse of
discretion standard. Jackson v. Reardon, 14 S.W.3d 816, 818 (Tex. App.--Houston
[1st Dist.] 2000, no pet.). However, to the extent resolution of this issue requires
interpretation of the statute itself, we review under a de novo standard. Ponce v. El
Paso Healthcare Sys., Ltd., 55 S.W.3d 34, 36 (Tex. App.--El Paso 2001, pet. denied)
(citing Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989)). The
MLIIA provides the following definitions pertinent to our case: 

 "Health care" means any act or treatment performed or furnished, or
which should have been performed or furnished, by any health care
provider for, to, or on behalf of a patient during the patient's medical
care, treatment, or confinement. 


 "Health care provider" means any person, partnership, professional
association, corporation, facility, or institution duly licensed or chartered
by the State of Texas to provide health care as a registered nurse,
hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer,
employee, or agent thereof acting in the course and scope of his
employment.


 "Health care liability claim" means a cause of action against a health
care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care or health
care or safety which proximately results in injury to or death of the
patient, whether the patient's claim or cause of action sounds in tort or
contract. 


Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817,
§ 1.03(a)(2), (3), (4), 1977 Tex. Gen. Laws 2039, 2041, repealed by Act of June 2,
2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current
version at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001-.507 (Vernon Supp. 2006))
(the Act referenced hereinafter as the MLIIA or former article 4590i). Thus, a health
care liability claim is based on a breach of a standard of care applicable to health care
providers. Bush v. Green Oaks Operator, Inc., 39 S.W.3d 669, 672 (Tex.
App.--Dallas 2001, no pet.). The MLIIA requires that a qualified physician or health
care expert make a written report, to be filed by the plaintiff, regarding the applicable
standard of care, the breach of that standard, and causation of the plaintiff's damages. 
Former art. 4590i, §§ 13.01, 14.01; Rogers v. Crossroads Nursing Serv., Inc., 13
S.W.3d 417, 419 (Tex. App.--Corpus Christi 1999, no pet.). To state a health care
liability cause of action, the act or omission complained of must be an inseparable
part of the rendition of medical services. Diversicare, 185 S.W.3d at 848. In
determining whether a particular case presents a health care liability claim, we must
examine the underlying nature of the claim and are not bound by the form of the
plaintiff's pleading. Id. at 847 (citing Sorokolit v. Rhodes, 889 S.W.2d 239, 242
(Tex. 1994).

Discussion


1. Health Care Liability Claim 

 In his first issue, appellant contends that the trial court erred in finding that his
original petition stated a health care liability claim under the meaning of the MLIIA. 
Appellant argues that his original petition asserted claims based on St. Luke's breach
of an ordinary standard of care, not a medical standard of care. On remand, appellant
contends that Diversicare confirms this Court's original opinion by clarifying the
distinction between health care liability claims and ordinary negligence claims. 
Appellant cites Cobb v. Dallas Fort Worth Medical Center--Grand Prairie, 48
S.W.3d 820 (Tex. App.--Waco 2001, no pet.), to support his argument that the
standard of care relating to the assembly and maintenance of a bed in a hospital is no
different from that in a hotel, department store, or private home. 

 Appellant's reliance on Cobb is misplaced. In Cobb, the hospital's central
supply delivered an incomplete set of screws to be used in surgery to correct Cobb's
damaged disc. Id. at 823. The surgeon performed the operation, using the screws that
were provided. Id. The surgeon later discovered that the screws were too small, and
further surgery was required. Id. The majority opinion analyzed the negligence issue
in terms of a standard of care for "non-medical, administrative, ministerial, or routine
care at a hospital" and concluded that the plaintiff made a prima facie case for
recovery for negligence against the hospital. Id. at 825-26. The opinion does not
mention the MLIIA. The concurring justice addressed the claim in light of the
MLIIA, but concluded that the legislature did not intend the MLIIA to cover such a
claim. Id. at 828-29. The dissenting justice would have held that the plaintiff's claim
was for "medical care," that only a person can practice medicine, and therefore the
claim should have been against the physician, not the hospital. Id. at 831. Because
Cobb was decided before Diversicare, Cobb is not helpful in applying Diversicare
to the facts of the present case. 

 In Diversicare, the Court broadly interpreted the statutory definition of "health
care liability claim" and concluded that Rubio's claims were causes of action for
departures from accepted standards of professional health care and safety and were
therefore claims under the MLIIA. Diversicare, 185 S.W.3d at 845. Those claims
included failing to provide adequate supervision and nursing services to meet her
fundamental needs; failing to budget for, hire, and train sufficient qualified health
care staff; failing to develop and implement policies and procedures for safety,
training, and staffing; and failing to supervise and monitor Rubio to protect her from
sexual abuse and assault. Id. The Court noted "that judgments concerning health and
medical care, including protection of patients, are made by health care professionals
as part of the care and treatment of the patients admitted to their facilities." Id. at
853. In discussing departures from accepted standards of safety, the Court stated,

 [T]he Legislature's inclusion within the scope of the MLIIA of claims
based on breaches of accepted standards of 'safety' expands the scope
of the statute beyond what it would be if it only covered medical and
health care. Professional supervision, monitoring, and protection of the
patient population necessarily implicate the accepted standards of safety
under the MLIIA, just as those duties in this case are included in the
term of health care." 


Id. at 855. 


 Appellant argues that his complaint concerns the assembly and maintenance
of the bed, and that those responsible for such assembly and maintenance are not
exercising professional medical judgment and do not provide health care and that a
hospital bed is not an integral part of the treatment provided by the health care
provider. We reject these arguments. A hospital bed is not an ordinary bed. It is
specially constructed to enable health care personnel to tend to the needs of patients. 
Use of the bed was an inseparable part of the services rendered to appellant during
his recovery from back surgery. 

 In this case, appellant's claims in his original petition are similar to Rubio's. 
Appellant alleged that St. Luke's breached the duty of ordinary care by failing to train
and supervise staff properly, failing to provide required assistance for daily living
activities, failing to provide a safe environment in which appellant could receive
treatment and recover, and providing a hospital bed that had been negligently
attached and assembled. These claims, like Rubio's, state causes of action for
departures from accepted standards of medical care, health care, and safety. 
Specifically, the underlying nature of the complaints regarding the failure to provide
a safe environment and the negligent assembly of the bed are complaints of a breach
of the accepted standards of safety. Artful pleading to divide a health care claim into
multiple causes of action is not permitted. Id. at 854.

 Because we conclude that all the complaints in appellant's original petition
relate to departures from accepted standards of medical care, health care, or safety,
we further conclude that these claims are governed by the MLIIA. 

 We overrule appellant's first issue. 

2. Grace Period to File Experts' Reports

 In his second issue, appellant contends that he was entitled to a grace period
in which to file his experts' reports. Appellant argues that his motion for a grace
period was timely filed because it was filed before the trial court ruled on St. Luke's
motion to dismiss. To support this argument, appellant cites cases in which the
motion for a grace period was filed after the trial court ruled on the motion to dismiss. 
He interprets the statutory language that a motion "shall be considered timely if it is
filed before any hearing on a motion [to dismiss] by a defendant" not to "require that
the motion be filed before the hearing is begun." 

 Section 13.01(g) of former article 4590i provides for a 30-day grace period for
filing the required expert report if the court finds that the failure to timely file the
report is the result of an accident or mistake. The statute then states, "A motion by
a claimant for relief under this subsection shall be considered timely if it is filed
before any hearing on a motion by a defendant under Subsection (e) of this section." 
(Emphasis added.) The only possible interpretation of "before any hearing" is
"before any hearing is begun." If the motion is filed after the hearing is begun, it is
filed during the hearing, and if it is filed after the hearing is completed, it is filed after
the hearing. The fact that some plaintiffs waited until after the court signed an order
dismissing their claims does not alter the meaning of the statute. 

 In this case, St. Luke's filed its motion to dismiss on January 23, 2004. The
trial court conducted a hearing on that motion on February 3, 2004 and conducted an
additional hearing on February 6 at appellant's request. Appellant filed his motion
for a grace period on February 5 and presented it to the trial court on February 6. 
Appellant's motion was untimely because it was not filed before any hearing on St.
Luke's motion, and the trial court was not required to grant appellant a 30-day
extension to file his experts' reports. Therefore, the trial court did not abuse its
discretion in denying appellant's motion. See Strom v. Mem'l Hermann Hosp. Sys.,
110 S.W.3d 216, 226 (Tex. App.--Houston [1st Dist.] 2003, pet. denied) (holding
that denial of untimely request was not abuse of discretion); Jackson v. Reardon, 14
S.W.3d 816, 819 (Tex. App.--Houston [1st Dist.] 2000, no pet.) (same). 

 We overrule appellant's second issue. 

Conclusion


 We affirm the trial court's order. 



 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Jennings, and Alcala. 


Justice Jennings, concurring in part and dissenting in part. 
1. Marks v. St. Luke's Episcopal Hosp., 177 S.W.3d 255 (Tex. App.--Houston [1st
Dist.] 2006), vacated, 193 S.W.3d 575 (Tex. 2006). 
2. Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817,
§ 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. &
Rem. Code Ann. §§ 74.001-.507 (Vernon Supp. 2006)). The repealed act was in effect at
the time Marks filed this lawsuit. 
3. St. Luke's Episcopal Hosp. v. Marks, 193 S.W.3d 575 (Tex. 2006).