Irving W. MARKS, Appellant,

v.

ST. LUKE'S EPISCOPAL HOSPITAL, Appellee.

No. 01–04–00228–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 3, 2007.

Rehearing Overruled Aug. 17, 2007.

---

James E. Doyle, Doyle, Resptrepo, Harwin & Robbins, LLP, Michael P. Doyle, Doyle Raizner LLP, Michael David Schimek, Houston, TX, for appellant.

Jennifer H. Davidow, L. Boyd Smith Jr., Vinson & Elkins LLP, Houston, TX, for appellee.

Panel consists of Justices NUCHIA, JENNINGS, and ALCALA.

## OPINION ON REMAND

SAM NUCHIA, Justice.

Appellant, Irving W. Marks, appeals from a final order dismissing his claims against appellee, St. Luke's Episcopal Hospital ("St. Luke's"), for failure to file expert reports as required by statute for health care liability claims. In our original opinion, we held that appellant's underlying complaint in his original petition related to premises liability, not medical liability, and that appellant's complaint was governed by an ordinary standard of care. We reversed the trial court's order dismissing appellant's claims and remanded the case to the trial court for further proceedings.[1]

Subsequent to our opinion, the Texas Supreme Court concluded that a patient's claims that a nursing home's negligence in failing to provide adequate supervision and nursing services proximately caused her injuries from a sexual assault by another patient could be characterized as a departure from accepted standards of safety and were therefore governed by the Medical Liability Insurance Improvement Act (the MLIIA).[2] *See Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842 (Tex. 2005). On St. Luke's petition for review of our opinion, the supreme court vacated our judgment and remanded the case for further consideration in light of that Court's decision in *Diversicare.*[3]

On remand, we must first consider whether, in light of *Diversicare,* appellant's complaint is governed by the MLIIA. Because we conclude that appellant's original petition asserted a departure from accepted safety standards and is therefore a health care liability claim, we must also consider whether the trial court abused its discretion in denying appellant's motion for a grace period in which to file his experts' reports to support his claim. We hold that the trial court did not abuse its discretion and affirm the trial court's judgment.

## Statement of Facts

In his original petition, appellant alleged the following facts:

---

1. *Marks v. St. Luke's Episcopal Hosp.,* 177 S.W.3d 255 (Tex.App.-Houston [1st Dist.] 2005), *vacated,* 193 S.W.3d 575 (Tex.2006).

2. Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws

847, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon Supp. 2006)). The repealed act was in effect at the time Marks filed this lawsuit.

3. *St. Luke's Episcopal Hosp. v. Marks,* 193 S.W.3d 575 (Tex.2006).

5. On or about March 24, 2000, Irving Marks, a 66–year old man, suffered severe injuries after a fall from his hospital bed at St. Luke's.

6. Mr. Marks was admitted to St. Luke's on March 17, 2000; to undergo treatment for chronic intractable failed back symptomatology and intractable radiculopathy after five lumbar operations failed to cure Mr. Marks' severe back problems.

7. On March 17, 2000, Mr. Marks underwent surgery to implant an intrathecal morphine pump catheter. Immediately following his surgery, Mr. Marks began his morphine treatment with an initial dose of .25 milligrams, and Mr. Marks' morphine doses were raised incrementally up to four milligrams on the ninth day.

8. After his surgery and his morphine treatment, Mr. Marks' condition improved drastically until Mr. Marks fell the night of March 24, 2000.

9. At the time of his fall, Mr. Marks was getting up from his hospital bed in the middle of the night, and Mr. Marks was in an upright position sitting at or near the foot of his hospital bed. Mr. Marks placed his hand on the hospital bed's footboard to push himself up to a standing position. As he was pushing himself up, the hospital bed's footboard fell off causing Mr. Marks to fall to the floor.

10. Mr. Marks suffered severe personal injuries as a result of the fall.

Appellant asserted that St. Luke's "breached the duty of ordinary care owed to Mr. Marks" in the following ways:

a. By failing to properly train and supervise any and all agents, employees, servants, and nursing staff when caring for Mr. Marks to prevent and protect him from falls and injuries;

b. By failing to provide Mr. Marks with the assistance he required for daily living activities;

c. By failing to provide Mr. Marks with a safe environment in which to receive treatment and recover; and

d. By providing Mr. Marks with a hospital bed that had been negligently attached and assembled by [St. Luke's] employees, agents, servants or nursing staff.

Appellant did not file any expert's report within 180 days of filing his original petition. Appellant's second amended petition alleged additional acts of negligence, including the following:

d. Failing to properly monitor Mr. Marks;

. . . .

h. Failing to ensure that adequate policies and procedures were in place for the hiring, training and supervision of the nursing staff at the hospital; and

i. Failing to ensure that the person(s) hired to work at the hospital had a sufficient understanding of safety concerns for the patients and was competent to formulate policies and procedures for patient safety and quality assurance.

Believing that these additional claims might have asserted health care liability claims under Texas law, appellant filed two experts' reports within 180 days of filing his second amended petition. St. Luke's filed a motion to dismiss, arguing that the claims asserted by appellant in his original petition also constituted health care liability claims as defined in the MLIIA, and that appellant had failed to provide expert reports within 180 days of the original filing, as required by that statute. After the hearing on St. Luke's motion, appellant filed a motion to extend the time for

filing the reports, arguing that he did not intend the original petition to assert a health care liability claim and therefore believed that expert reports were not required. The trial court found that the original petition did assert health care liability claims, denied appellant's motion to extend the time to file expert reports, and granted St. Luke's motion to dismiss.

### Standard of Review

A dismissal under the MLIIA is generally reviewed under an abuse of discretion standard. *Jackson v. Reardon,* 14 S.W.3d 816, 818 (Tex.App.-Houston [1st Dist.] 2000, no pet.). However, to the extent resolution of this issue requires interpretation of the statute itself, we review under a de novo standard. *Ponce v. El Paso Healthcare Sys., Ltd.,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied) (citing *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989)). The MLIIA provides the following definitions pertinent to our case:

> "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.
> "Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.
> "Health care liability claim" means. a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care

or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, § 1.03(a)(2), (3), (4), 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–.507 (Vernon Supp.2006)) (the Act referenced hereinafter as the MLIIA or former article 4590i). Thus, a health care liability claim is based on a breach of a standard of care applicable to health care providers. *Bush v. Green Oaks Operator, Inc.,* 39 S.W.3d 669, 672 (Tex.App.-Dallas 2001, no pet.). The MLIIA requires that a qualified physician or health care expert make a written report, to be filed by the plaintiff, regarding the applicable standard of care, the breach of that standard, and causation of the plaintiff's damages. Former art. 4590i, §§ 13.01, 14.01; *Rogers v. Crossroads Nursing Serv., Inc.,* 13 S.W.3d 417, 419 (Tex.App.-Corpus Christi 1999, no pet.). To state a health care liability cause of action, the act or omission complained of must be an inseparable part of the rendition of medical services. *Diversicare,* 185 S.W.3d at 848. In determining whether a particular case presents a health care liability claim, we must examine the underlying nature of the claim and are not bound by the form of the plaintiff's pleading. *Id.* at 847 (citing *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994)).

### Discussion

#### 1. Health Care Liability Claim

In his first issue, appellant contends that the trial court erred in finding that his original petition stated a health care liabili-

ty claim under the meaning of the MLIIA. Appellant argues that his original petition asserted claims based on St. Luke's breach of an ordinary standard of care, not a medical standard of care. On remand, appellant contends that *Diversicare* confirms this Court's original opinion by clarifying the distinction between health care liability claims and ordinary negligence claims. Appellant cites *Cobb v. Dallas Fort Worth Medical Center—Grand Prairie*, 48 S.W.3d 820 (Tex.App.-Waco 2001, no pet.), to support his argument that the standard of care relating to the assembly and maintenance of a bed in a hospital is no different from that in a hotel, department store, or private home.

Appellant's reliance on *Cobb* is misplaced. In *Cobb*, the hospital's central supply delivered an incomplete set of screws to be used in surgery to correct Cobb's damaged disc. *Id.* at 823. The surgeon performed the operation, using the screws that were provided. *Id.* The surgeon later discovered that the screws were too small, and further surgery was required. *Id.* The majority opinion analyzed the negligence issue in terms of a standard of care for "non-medical, administrative, ministerial, or routine care at a hospital" and concluded that the plaintiff made a prima facie case for recovery for negligence against the hospital. *Id.* at 825–26. The opinion does not mention the MLIIA. The concurring justice addressed the claim in light of the MLIIA, but concluded that the legislature did not intend the MLIIA to cover such a claim. *Id.* at 828–29. The dissenting justice would have held that the plaintiff's claim was for "medical care," that only a person can practice medicine, and therefore the claim should have been against the physician, not the hospital. *Id.* at 831. Because *Cobb* was decided before *Diversicare*, *Cobb* is not helpful in applying *Diversicare* to the facts of the present case.

In *Diversicare*, the Court broadly interpreted the statutory definition of "health care liability claim" and concluded that Rubio's claims were causes of action for departures from accepted standards of professional health care and safety and were therefore claims under the MLIIA. *Diversicare*, 185 S.W.3d at 845. Those claims included failing to provide adequate supervision and nursing services to meet her fundamental needs; failing to budget for, hire, and train sufficient qualified health care staff; failing to develop and implement policies and procedures for safety, training, and staffing; and failing to supervise and monitor Rubio to protect her from sexual abuse and assault. *Id.* The Court noted "that judgments concerning health and medical care, including protection of patients, are made by health care professionals as part of the care and treatment of the patients admitted to their facilities." *Id.* at 853. In discussing departures from accepted standards of safety, the Court stated,

> [T]he Legislature's inclusion within the scope of the MLIIA of claims based on breaches of accepted standards of 'safety' expands the scope of the statute beyond what it would be if it only covered medical and health care. Professional supervision, monitoring, and protection of the patient population necessarily implicate the accepted standards of safety under the MLIIA, just as those duties in this case are included in the term of health care.

*Id.* at 855.

Appellant argues that his complaint concerns the assembly and maintenance of the bed, and that those responsible for such assembly and maintenance are not exercising professional medical judgment and do not provide health care and that a hospital bed is not an integral part of the treatment

provided by the health care provider. We reject these arguments. A hospital bed is not an ordinary bed. It is specially constructed to enable health care personnel to tend to the needs of patients. Use of the bed was an inseparable part of the services rendered to appellant during his recovery from back surgery.

 In this case, appellant's claims in his original petition are similar to Rubio's. Appellant alleged that St. Luke's breached the duty of ordinary care by failing to train and supervise staff properly, failing to provide required assistance for daily living activities, failing to provide a safe environment in which appellant could receive treatment and recover, and providing a hospital bed that had been negligently attached and assembled. These claims, like Rubio's, state causes of action for departures from accepted standards of medical care, health care, and safety. Specifically, the underlying nature of the complaints regarding the failure to provide a safe environment and the negligent assembly of the bed are complaints of a breach of the accepted standards of safety. Artful pleading to divide a health care claim into multiple causes of action is not permitted. *Id.* at 854.

Because we conclude that all the complaints in appellant's original petition relate to departures from accepted standards of medical care, health care, or safety, we further conclude that these claims are governed by the MLIIA.

We overrule appellant's first issue.

## 2. Grace Period to File Experts' Reports

In his second issue, appellant contends that he was entitled to a grace period in which to file his experts' reports. Appellant argues that his motion for a grace period was timely filed because it was filed before the trial court ruled on St. Luke's

motion to dismiss. To support this argument, appellant cites cases in which the motion for a grace period was filed after the trial court ruled on the motion to dismiss. He interprets the statutory language that a motion "shall be considered timely if it is filed before any hearing on a motion [to dismiss] by a defendant" not to "require that the motion be filed **before** the hearing is begun."

 Section 13.01(g) of former article 4590i provides for a 30–day grace period for filing the required expert report if the court finds that the failure to timely file the report is the result of an accident or mistake. The statute then states, "A motion by a claimant for relief under this subsection shall be considered timely if it is filed *before any hearing* on a motion by a defendant under Subsection (e) of this section." (Emphasis added.) The only possible interpretation of "before any hearing" is "before any hearing is begun." If the motion is filed after the hearing is begun, it is filed *during* the hearing, and if it is filed after the hearing is completed, it is filed *after* the hearing. The fact that some plaintiffs waited until after the court signed an order dismissing their claims does not alter the meaning of the statute.

 In this case, St. Luke's filed its motion to dismiss on January 23, 2004. The trial court conducted a hearing on that motion on February 3, 2004 and conducted an additional hearing on February 6 at appellant's request. Appellant filed his motion for a grace period on February 5 and presented it to the trial court on February 6. Appellant's motion was untimely because it was not filed *before* any hearing on St. Luke's motion, and the trial court was not required to grant appellant a 30–day extension to file his experts' reports. Therefore, the trial court did not abuse its discretion in denying appellant's motion.

*See Strom v. Mem'l Hermann Hosp. Sys.,* 110 S.W.3d 216, 226 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (holding that denial of untimely request was not abuse of discretion); *Jackson v. Reardon,* 14 S.W.3d 816, 819 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (same).

We overrule appellant's second issue.

**Conclusion**

We affirm the trial court's order.

Justice JENNINGS, concurring in part and dissenting in part.

TERRY JENNINGS, Justice, concurring in part and dissenting in part.

I agree with this Court's judgment to the extent that it affirms the trial court's order dismissing the actual health care liability claims of appellant, Irving W. Marks, against appellee, St. Luke's Episcopal Hospital. However, the majority errs in concluding that Marks, in his Original Petition, asserted only "a departure from accepted safety standards ... [which is] a health care liability claim" and in conflating his separate premises liability claim with his health care liability claims. It then errs in affirming the trial court's order dismissing Marks's suit in its entirety by misinterpreting the Texas Supreme Court's opinion in *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842 (Tex.2005).

In his Original Petition, Marks alleged, among other things, that,

9. At the time of his fall, Mr. Marks was getting up from his hospital bed in the middle of the night, and Mr. Marks was in an upright position sitting at or near the foot of his hospital bed. Mr. Marks placed his hand on the hospital bed's footboard to push himself up to a standing position. As he was pushing himself up, the hospital bed's footboard fell off causing Mr. Marks to fall to the floor.

10. Mr. Marks suffered severe personal injuries as a result of the fall.

. . . .

12. Defendant, by and through its agents and/or employees, was negligent in the conduct described above. Defendant, by and through its agents and/or employees, breached the duty of ordinary care owed to Mr. Marks including but not limited to the following particulars:

. . . .

d. By providing Mr. Marks with a hospital bed that had been negligently attached and assembled by the Defendant's employee's agents, servants or nursing staff.

In his Second Amended Petition, Marks more clearly asserts his claim for "PREMISES LIABILITY," alleging specifically, among other things, that,

24. Mr. Marks's dislocated shoulder and injuries to his knee, neck and head were brought about as a result of his hospital bed's dangerous condition. In particular, the bed's dangerous condition can be attributed to its unstable, broken and/or defective footboard and the improper use or absence of its bed rails. This condition imposed an unreasonable risk of harm.

25. St. Luke's breached its duty owed to Mr. Marks including but not limited to the following particulars:

a. Failing to keep Mr. Marks's hospital bed in a reasonably safe condition; and

b. Failing to adequately warn Mr. Marks of and protect Mr. Marks

from the dangerous condition of his bed.

In regard to the instant case, the Medical Liability and Insurance Improvement Act defined a "health care liability claim" as,

a cause of action against a health care provider or physician for *treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety* which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 ("Former Tex. Rev.Civ. Stat. art. 4590i, § 1.03(a)(4)") (emphasis added).

In *Diversicare*, Rubio, a nursing home resident, brought an action, by her daughter and next friend, against the corporate owner of a nursing home, seeking recovery on theories of negligent supervision and failure to provide nursing services, breach of implied covenant to provide reasonably safe premises, and fraudulent inducement for injuries resulting from sexual abuse and sexual assault by another resident. 185 S.W.3d at 845. The supreme court concluded that Rubio's causes of action were actually claims for breaches of the standard of care for a health care provider "because the supervision of Rubio and the patient who assaulted her and the protection of Rubio [were] *inseparable* from the health care and nursing services provided to her." *Id.* at 849 (emphasis added).

Here, the majority concludes that Marks's claims "are similar to Rubio's." Although Marks made allegations and claims that fall within the definition of a health care liability claim, he also present-ed a separate premises liability claim. Marks's initial claim that his "hospital bed ... had been negligently attached and assembled by [St. Luke's] employee's agents, servants or nursing staff" simply had nothing to do with a claim for "treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety." *See* Former Tex. Rev.Civ. Stat. art. 4590i, § 1.03(a)(4). Nor does his subsequent claim about the bed's "dangerous condition."

In fact, the majority of the supreme court, in response to the concurring and dissenting opinions in *Diversicare*, made it clear that,

There may be circumstances that give rise to premises liability claims in a healthcare setting that may not be properly classified as health care liability claims, but those circumstances are not present here.

185 S.W.3d at 854. The majority emphasized that Rubio's claims implicated "more than inadequate security or negligent maintenance." *Id.* It explained,

Rubio is not complaining about an unlocked window that gave an intruder access to the facility or a rickety staircase that gave way under her weight. *All of her claims* arise from acts or omissions that are inseparable from the provision of health care.

*Id.* (emphasis added). The "gravamen of Rubio's complaint [was] the alleged failure of Diversicare to implement adequate policies to care for, supervise, and protect its residents who require special, medical care." *Id.*

Here, Marks is actually complaining of the hospital bed's footboard that gave way under his weight. In this regard, he is not making a claim for "treatment, lack of treatment, or other claimed departure from accepted standards of medical care or

health care or safety." Unlike the claims made by Rubio in *Diversicare*, Marks's claim about the hospital bed implicates negligent maintenance, not health care. He is not fracturing or recasting a statutorily defined health care liability claim into a premises liability claim. Like an "unlocked window" or a "rickety staircase," the hospital bed in this case constituted "a dangerous condition," and Marks's premises liability claim is in fact separate from St. Luke's provision of health care. As such, Marks's allegations reveal a circumstance that gives rise to a premises liability claim in a healthcare setting that may not be properly classified as a health care liability claim. *See id.* at 854.

In concluding otherwise, the majority of this court errs. Accordingly, I would reverse the trial court's order in regard to Mark's premises liability claim. I would affirm the trial court's order only to the extent that it dismissed the actual health care liability claims of Marks.